# In re Contested Election of Martin McDonough.

Under the Registry law of January 30, 1874 (P. L., 31), preliminary proof of his qualifications is necessary to constitute an unregistered elector a legal voter. If the proof is not made before the vote is received, it cannot be made on the trial of a contested election so as to legalize the vote. Such construction of the Act does not render the same unconstitutional.

February 28, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to the Court of Quarter Sessions of *Lackawanna county :* Of January Term, 1884, No. 171.

This was a petition by twenty-seven qualified electors of Lackawanna county, filed in the Court of Quarter Sessions, contesting the election of Martin McDonough, who was returned as elected, on November 7, 1882, to the office of prothonotary of said county, and averring that Thomas H. Dale received a majority of the lawful votes cast at said election.

Among the grounds specifically alleged in the petition was the following: That the election officers received certain votes from " persons who were not qualified voters, for the reason that their names were not on the registered lists of voters, and who failed to make legal proof of their right to vote." The petitioners filed bills of particulars setting out, inter alia, the names of a large number of persons whose votes had been received, though said voters were not registered, and they made no proof by affidavits that they were qualified to vote.

The respondent moved to strike out from the petitioners' bill of particulars all the above described names. The court, HANDLEY, P. J., after hearing, made the following order:

" We order and direct that all names of persons named in the bill of particulars as not having been registered, and not having made the preliminary proof, be stricken out of said bill, where it is shown that such persons are otherwise duly and legally qualified to vote."

The respondent filed an answer, and the cause was referred to a commissioner, who took the testimony of more than two thousand one hundred witnesses, and who made. a report to the court.

The court, after hearing, decided that the legal votes cast for the candidates were: For McDonough, 6,432; for Dale, 6,420 ; McDonough's majority, 12.

[It was stated, on the argument in this court, by counsel for the appellants, that the court below, in estimating the legal votes, counted over three hundred votes cast by persons

]In re Election of McDonough.]

who were unregistered, and who made no preliminary proof of their qualifications to vote; and that if these had been excluded from the computation the result would have been in favor of Dale. This, however, was not admitted by counsel for the appellees.]

The court also decided that the petitioners had not shown probable cause for the contest.

A final decree was entered, adjudging that Martin McDonough had received a majority of votes at said election, and was therefore duly elected to the office of prothonotary; and that the costs of the contested election proceedings be paid by the petitioners.

The petitioners thereupon took this certiorari, assigning for error (1 and 2) the order of the court striking out from the petitioner's bill of particulars the names of unregistered voters who made no preliminary proof of their qualifications to vote, and the counting of such votes where their qualifications were subsequently proved; and (5 and 6) the said final decree.

*Henry W. Palmer*, (*H. M. Edwards* with him,) for plaintiffs in error.—The plain requirements of the Act of 1874 (P. L., 35,) are that no unregistered elector shall be allowed to vote without making preliminary proof: In re School Directors of Pittston, 3 Luz. Leg. Reg., 10; Duffy's Case, 2 Id., 49; Griffiths' Case, 9 Id., 197. A statute requiring that previous to an election the qualifications of voters shall be proved is not *per se* unconstitutional: Page *v.* Allen, 8 P. F. S., 338; Patterson *v.* Barlow, 10 Id., 54; Capen *v.* Foster, 12 Pick., 485; Hardesty *v.* Taft, 23 Md., 512; Anderson *v.* Baker, Id., 531; Auld *v.* Walton, 12 La. Ann., 129; State *v.* Bond, 38 Mo., 425; Ensworth *v.* Albin, 46 Id., 453; State *v.* Stumpf, 23 Wis., 630; State *v.* Hilmantel, 21 Id., 566.

*Lemuel Amerman*, (*John B. Collings* with him,) for defendants in error.—The right of suffrage is in the nature of a constitutional grant of power or of privilege that cannot be taken away by any authority known to the government: State *v.* Adams, 2 Stew. (Ala.), 239. A duly and legally qualified voter possessing all the qualifications required by the Constitution will not be disfranchised by reason of the neglect of the regulation of registration or affidavit of qualifications: Wheelock's Case, 1 Nor., 297; State ex rel Wood *v.* Baker, 38 Wis., 71; Dale *v.* Irwin, 78 Ill., 172; Clark *v.* Robinson, 88 Ill., 498; Gillin *v.* Armstrong, 12 Phila., 626; Commonwealth *v.* Cornelius, 8 W. N. C., 215; Bushnell *v.* Powderly, 2 Law Times, N. s., 157; Duffy's Case, 2 Luz. Leg. Reg., 49; Grif-

fiths' Case, 9 Id., 197. The neglect of a legislative regulation on part of voters or on part of election officers, will not invalidate the vote of a duly and legally qualified voter : Skerrett's Case, 2 Parsons, 509 ; Kneass's Case, Id., 559 ; Mann *v.* Cassidy, 1 Brewst., 31 ; Ewing *v.* Filley, 7 Wright, 384 ; People *v.* Cook, 8 N. Y., 67 ; People *v.* Pease, 27 Id., 45, 72.

Mr. Justice TRUNKEY delivered the opinion of the court, March 31, 1884.

The constitution defines the qualifications of electors, and declares that every person who possesses them shall be entitled to vote at all elections. And it provides that " All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the state, but no elector shall be deprived of the privilege of voting by reason of his name not being registered."

It has been often said that the legislature must prescribe regulations to insure the orderly and free exercise of the elector's right ; that such regulations must be subordinate to the right, and not abridge or impair it ; and that any statutory regulation that would change the qualifications prescribed by the constitution, or add a new one, would be invalid. Not only is it competent for, but it is the duty of the legislature to prescribe the mode of ascertaining who are the qualified electors ; their rights are conserved by the exclusion of the votes of other persons, and the interests of the state demand exclusion of all who are unqualified. The constitution contemplates legislation to provide the mode of ascertaining who are the electors, and directs that all laws for that purpose shall be uniform, and that none shall be deprived of voting by reason of his name not being registered. There is no prohibition of requirement that an unregistered person shall make proof of his qualifications before his vote shall be admitted.

The Act of January 30, 1874, provides for the registry of electors, and the furnishing of lists of their names to the proper officers on the morning of the election. " And no man shall be permitted to vote at the election on that day whose name is not on said list, unless he shall make proof of his right to vote, as hereinafter required." Sec. 3.

" On the day of election, any person whose name shall not appear on the registry of voters, and who claims the right to vote at said election, shall produce at least one qualified voter of the district as a witness to the residence of the claimant in the district in which he claims to be a voter, for the period of at least two months immediately preceding said election, which witness shall be sworn or affirmed, and subscribe a

[In re Election of McDonough.]

written, or partly written and partly printed affidavit to the facts stated by him, which affidavit shall define clearly where the residence is of the person so claiming to be a voter; and the person so claiming the right to vote shall also take and subscribe" an affidavit stating such facts as show that he has the necessary qualifications. . . . . . "The said affidavits of all persons making such claims, and the affidavits of the witnesses to their residence, shall be preserved by the election board, and at the close of the election they shall be inclosed with the list of voters, tally list, and other papers required by law to be filed by the return judge with the prothonotary, and shall remain on file therewith in the prothonotary's office, subject to examination as other election papers are." Sec. 10.

This statute does not impinge the elector's constitutional right. On the day of election, if unregistered, he may produce the affidavits, his own being sufficient, save as to residence in the district, and to that the affidavit of one elector, with his own, suffices. The public welfare is promoted by regulations for such proof at the time the vote is offered as will prevent unqualified persons from voting, and thereby defeating the choice of the electors for public officers. Hence the mandatory provisions that the election officers shall permit no man to vote whose name is not registered until he produces the required proof, and that any person claiming the right to vote, whose name is unregistered, shall produce the proof at the time he offers to vote. In absence of registry of the name of the voter and affidavits, rejecting of the vote by the officers is an imperative duty. Upon conviction of neglect of that duty they shall be guilty of a misdemeanor, and may be punished by fine and imprisonment. By the natural meaning of the language of the statute, no unregistered person can lawfully vote until he produces the affidavits. All parties agree that the votes of persons whose names are not registered, and who produced no affidavits, are prima facie illegal. Shall such votes be counted as legal, on the trial of a contested election, upon proof that they were cast by persons who possessed the qualifications of an elector? This is the only question raised by the assignments of error which this court can consider, for questions not appearing in the record are not subjects of review in this proceeding.

Under the Act of July 2, 1839, it was the duty of inspectors to require proofs of the right to vote of every person whose name was not on the list of taxable inhabitants. This duty was very often disregarded by the election officers, and although they were liable to indictment, they nearly as often escaped prosecution. Instead of demanding proof on oath, according to law, frequently one of those officers would vouch

for the person offering to vote, and thereupon the board would receive his vote—a practice denounced as illegal and dangerous, and never sanctioned by the courts. The requisite proof was merely oral. Under that Act it was held that if a person was permitted to vote without the proofs his vote should not be rejected on a contest if it were proved that he was actually a qualified elector. Doubtless, the action of the election officers and the ruling of the courts resulted from the sections 64 and 67, which only obligated the persons claiming the right to vote to adduce the prescribed proofs " if required." That Act proved very inadequate for security of the electors against frauds. A judge who had opportunity to observe its efficiency, in 1858, remarked: " In some districts of the city—plague spots—fraudulent voting is the rule and honest voting the exception." If that was an exaggerated statement, still there was so much evil as to lead to the enactment of a registry law on April 4, 1868. That Act was declared unconstitutional on the ground that it deprived persons of their votes who moved into an election district more than ten days prior to an election, but less than twenty: Page et al. *v.* Allen et al., 58 Pa. St., 338. At the next session. of the legislature the registry Act of April 17, 1869, was passed, with provisions for the city of Philadelphia differing in important particulars from those of other parts of the state. In that city an unregistered person could not vote. The inequalities in that Act, the great difficulty for many persons to procure registration under its provisions for Philadelphia, and if unregistered the consequent deprivation of their votes, created much discussion respecting its constitutionality ; but it was decided that the Act was valid: Patterson et al. *v.* Barlow et al., 60 Pa. St., 54. Inequalities and unjust discriminations and deprivation of the right of an elector when his name is omitted from the registry by accident or design, in laws for the registration of electors, were terminated by the adoption of the constitution of 1874. The Act of 1874 is in pursuance of section 7 of article viii., already cited. It seems to have given satisfaction to the public wherever it has been faithfully observed by the officers intrusted with its execution.

Some of the salient points of the Act of 1874 for remedy of the defects of the Act of 1839 and the evils which had grown up, have been remarked. One of them is, oral evidence of a person's residence is inadmisible. And the affidavits shall be inclosed with the other papers and returned to a public office, subject to examination. Thus it is provided that on the registry and in the affidavits kept in a public office may be found the prima facie evidence of the right to vote of every person whose name is on the list of voters. Such evidence is uninvi-

ting to contests and vexatious litigation. If not found where it ought to be, there is strong inducement for the defeated candidates to contest the election. This case with its multitude of witnesses, heavy costs, and hundreds of prima facie illegal votes, illustrates the consequences of violating the statute. If the Act of 1874 be so construed that votes of unregistered persons who produce no affidavits, shall be counted as legal on proof in court that such persons had the qualifications of electors, it will be little better than the Act of 1839, and the evil of fraudulent voting will grow continually. Illegal votes, in such case, may be .cast by persons whose names are not on the registry and who commit no perjury for they swear to no affidavits. Adherence to the statute, if inconvenient to the elector, is a safeguard against illegal votes. There is no presumption that all men are electors. It is reasonable that there be proof of the right of every claimant before he exercises it. The State is wronged by evasion or practical nullification of the law. A proper construction of the statute concerns not alone the individual citizen, but all. The statute makes no provision by which an elector may prove his qualifications after casting his vote; it demands the proof before.

The provisions of the Act of 1869 which were applicable to all parts of the State, except Philadelphia, contained like prohibition of the votes of unregistered persons, unless they produced affidavits, as the Act of 1874. It was decided by Judge DANA in an able opinion that the plain and mandatory requirements of that Act could not be dispensed with by the election officers; that if they received the vote of a person whose name was not on the list without the preliminary proof which the law makes an essential prerequisite to its reception, such vote is as illegal as if the voter had none of the legal qualifications; and that it was not competent for the court to assume the duties of election boards and receive evidence on the trial which ought to have been, but was not, produced to the election officers: In re Contested Election of School Directors of Pittston, 3 Luz. L. Reg., 10. This accords with the views of Mr. Brightly as expressed in his notes in Leading Cases on Elections, 453, 492,

In Griffiths' Case, 9 Luz. L. Reg., 197, it is apparent that the decision of the learned Judge was based on his view of Wheelock's Case, 82 Pa. St., 297; s. c., 3 W. N. C., 163. The petition in the latter case set forth, inter alia, that there was no copy of the corrected assessment or registry of voters present at the election whereby the names of the resident voters could be ascertained, that two hundred and eight votes were illegally and fraudulently received by the election officers

[In re Election of McDonough.]

from persons whose names were not on any list or registry of voters present at the election, and who did not make any proof of their right to vote as required by law of persons claiming to vote whose names do not appear on the registry of voters at such election. A motion to quash was made, one of the grounds being that there was no allegation that any person voted at said election who was not duly registered as required by law. It was well said by the court below, that the question presented by the petition is, whether the fact that no copy or list of the voters was present at the election board on the day of election, makes the election void, and requires the poll to be set aside. That is the question which was decided, and all that could be affirmed in this court on the certiorari. There was no allegation that a registry had not been duly made, or that anybody voted whose name was not on the list of registered voters, or that any voter knew that the list was not present. It is not the case of unregistered persons voting without producing affidavits, but of registered persons voting where the officers neglected their duty.

In Wisconsin the provisions of the law for registration of voters, and prohibiting unregistered persons from voting at the annual elections unless they produce proofs, are similar to those now in force in this State. There it has been ruled, in an elaborate opinion, that the election officers cannot receive the vote of an unregistered person who furnishes no affidavits, and if they cannot, it cannot afterwards be received and counted by the courts. Also, that the statute is negative, and negative words will make a statute imperative: State v. Hilmantel, 21 Wis., 566. Where there was no registry of the voters of a town, and none of the persons who voted there at an election furnished the affidavits required by law to entitle the vote of an unregistered elector to be received, the whole vote of the town was rejected: State v. Stumpf, 23 Wis., 630. But it was held that where the election officers at an election had and used a defective and invalid registry list as if official and valid, the voters whose names were on such de facto registry list were not bound to inquire whether such registry was made in the manner prescribed by law, and their right to vote was not impaired by the fact that the registry was not legally made, and that they did not furnish other proof of their right as if unregistered. Such case was considered unlike that of an unregistered person when the registry had been duly made, or where there was none: State v. Baker, 38 Wis., 71.

The registry law in Illinois forbids the reception of votes from unregistered persons without proof of their qualifications, but it is so construed that if the voter was unchallenged the presumption is that he was a legal voter, and so known to

the judges of the election, and his vote shall be counted on the trial in a contested election. There was no attempt to support that construction by reason or authority: Dale *v.* Irwin, 78 Ill., 172. In a later case the ruling in Dale *v.* Irwin was approved on the ground that the prohibition of the statute is directory, notwithstanding the express negative terms: Clark *v.* Robinson, 88 Ill., 498. Unless there is some provision in the statute authorizing election officers to receive a vote on their own knowledge of the qualifications of the person who offers it, such judicial construction nullifies the law made to prevent fraudulent voting.

Decisions in other states where the enactments regulating the registration of electors and the holding of the elections, are unlike our own, cannot aid in the construction of the Act of 1874. The decisions in cases arising under this Act, and the Act of 1869, by the Courts of Common Pleas and Quarter Sessions, are entitled to careful consideration, though revealing contrariety in their conclusions.

We are of opinion that it is the imperative duty of an elector whose name is not on the list of registered voters to produce the required affidavits at the time he offers his vote, and that the election officers have no power to waive the production of the essential proofs. And the vote of such person, offered and received without the requisite affidavits, is illegal and cannot be made legal at a subsequent investigation in the courts.

The constitution contemplates that the electors shall be ascertained previous to the receiving of their votes, not that all men, qualified and unqualified, may cast their ballots, and the legal be separated from the illegal after the election. When an elector's name has not been registered, upon producing the prescribed affidavits to the election officers they shall receive his vote. He cannot lawfully vote without the proofs; they commit a crime if they receive his vote without. The law deprives no elector of his right of suffrage. If his vote be thrown out of the count because it was offered and received in violation of law, the deprivation results from his own wrongful act. The first and second assignments of error must be sustained.

> The judgment of the Court of Quarter Sessions is reversed, and the record is remitted for further proceeding.