# In re Contested Election in Butler County

*Greer & Greer*, for petitioner.

*Carmen V. Marionaro*, contra.

WILSON, P. J., January 4, 1937.—This case is before the court on petition of 20 or more qualified electors of But-

ler County complaining of an undue election or false return of J. Brady Murrin for and to the office of representative in the General Assembly at the general election held on November 3, 1936. . . .

This contest involves several questions of law:

1. Can the votes received by Albert McClester, a candidate of the Prohibition Party, be added to the votes received by Albert B. McClester, a candidate of the Republican Party?

We have found as a fact that Albert B. McClester and Albert McClester is one and the same person, and if there had been but one representative in the General Assembly to be elected in Butler County the votes received by Albert McClester, candidate of the Prohibition Party for that office, could have been added to the votes received by Albert B. McClester, candidate of the Republican Party for that office, identity being established: Seim's Appeal, 316 Pa. 225; but at this election two representatives in the General Assembly were to be elected by the voters of Butler County, and each voter had the right to vote for two candidates for the two offices.

The Act of April 29, 1903, P. L. 338, 25 PS §1729, provides:

"Whenever any candidate shall receive more than one nomination for the same office, his name shall be printed once, and the names of each political party, so nominating him, shall be printed to the right of the name of such candidate".

The names Albert B. McClester and Albert McClester, as they appear on the ballot, are two distinct individuals. Voters having only that information might vote for both of them. Voters knowing the names to represent the identical individual might make a cross mark after each name. If the votes should be cumulated, then voters so marking their ballots would be permitted to vote twice for the same candidate.

The ballot-boxes opened by the court during the sitting of the return board and also during this investigation

disclosed ballots with a cross (x) mark after Albert B. McClester, Republican, and also a cross (x) mark after Albert McClester, Prohibition. The number of ballots so marked could only be determined by opening the ballot-boxes for all of the districts of the county.

Judge Swearingen of Allegheny County, in In re Carothers' Election Contest, 25 Dist. R. 1151, said:

"Plainly one of the purposes of this provision is to prevent cumulative voting where each elector has the right to vote for more than one candidate. . . . It is a wise regulation, intended to frustrate fraud, and it ought to be strictly enforced."

He held that when the same person is a candidate of more than one party, and his name appears on the ballot under each party with name spelled differently, it must be assumed under section 14 of the Act of June 10, 1893, as amended, that the candidate of each party is a distinct individual, and votes for each cannot be cumulated. This opinion is cited in a recent opinion of Judge Elder Marshall of Allegheny County, adopted by the Supreme Court in Shaffer's Appeal, 323 Pa. 320.

We therefore conclude that the votes received by Albert McClester cannot be added to the votes received by Albert B. McClester.

2. Can a ballot marked in the party square opposite the party name Republican, Democratic or Prohibition, and also marked in the party square opposite the party name Old Age Pension, or opposite the name of any other party not having candidates for the office of representative in the General Assembly, be counted for candidates for that office of either the Republican, Democratic or Prohibition Party, as the mark indicates?

The Republican, Democratic and Prohibition parties each had on the ballot the names of candidates for all offices to be voted for at this election. The Old Age Pension Party did not have the name of any candidate for any office on the ballot, except that of Bernard Davidowitz for Auditor General, and the other parties named on the bal-

lot had one or more candidates for National and State offices, and, excepting the Republican, Democratic and Prohibition parties, none of them had the names of candidates for the office of representative in the General Assembly.

Under this state of facts and having in mind the rule that the vote is to be counted if the intention of the voter can be determined from the marks on the ballot, we would answer this question in the affirmative, but Court of Common Pleas of Dauphin County, in Middle Paxton Township Case, 43 Dauph. 180, in an exhaustive and well-considered opinion, based upon facts similar to those above, filed November 12, 1936, held that a ballot marked in more than one party square is void. On appeal, the Supreme Court, in an opinion filed on November 24, 1936, in Sholter's Appeal, 325 Pa. 48, said:

"Upon careful review of the record, we are of opinion that the conclusion of the court below is correct, but, as the question is moot, we can only dismiss the appeal".

We are therefore constrained to hold that a ballot having a cross mark in more than one party square is void and cannot be counted for any candidate.

3. Are the votes cast by 21 residents of the second ward of Butler Township, all of whom had all the qualifications of an elector of that ward as required by the Constitution, but whose names could not be found by the election officers on the list of registered voters furnished by the county commissioners, who were permitted to vote after the supply of affidavit blanks was exhausted, and each of whom, each with a qualified elector as witness, had been questioned orally by the election officers as to the matters and things set out in the affidavit forms and required by law, and duly sworn by the judge of election, illegal and void?

We cannot find after exhaustive search that this question, based upon the present established facts, has ever been answered by any appellate court. The cases, insofar as we have found, raise questions somewhat similar but on facts which are not identical: In re Wheelock's Elec-

tion, 82 Pa. 297; In re McDonough's Election, 105 Pa. 488; In re Cusick's Election, 136 Pa. 459.

In the Wheelock case the lower court held that the failure of the county commissioners to furnish a correct list of resident taxables to the officers of an election district, as required by the Act of January 30, 1874, P. L. 31, was not ground for setting aside the vote of the entire district; and also that the holding of the election in another district at a place other than that fixed by law and the sheriff's proclamation, was immaterial under the circumstances. The judgment of the lower court was affirmed by the Supreme Court.

In the McDonough case the lower court entered the following order:

"We order and direct that all names of persons named in the bill of particulars as not having been registered, and not having made the preliminary proof, be stricken out of said bill, where it is shown that such persons are otherwise duly and legally qualified to vote."

On appeal the Supreme Court reversed and remitted the record for further proceedings. It appears in the report of that case that the court below, in estimating the legal votes, counted over 300 votes cast by persons who were unregistered and who made no preliminary proof of their qualifications to vote. In the present case the 21 persons whose names were not on or could not be found in the list of voters in possession of the election officers made preliminary proof orally before receiving ballots.

In the Cusick case the questions involved were (1) that the affidavits of a large number of nonregistered voters did not have signatures to the jurats; (2) that the affidavits of 359 nonregistered voters did not state when and where the voter had been assessed a tax; (3) that the affidavits of 83 nonregistered naturalized citizens did not state when, where and by what court they were naturalized; (4) 305 nonregistered voters filed affidavits which did not state when, where and to whom a tax was paid.

The Supreme Court said, at page 476:

"It is sufficient to say that the act, being mandatory, must be strictly complied with. The law, however, does not intend that a duly qualified elector should lose his vote for the negligence or misprision of an election officer. Hence . . . when an affidavit has in point of fact been made in compliance with the act, and the informality is the result of the ignorance or neglect of the officer before whom it was taken, such defect could be cured and the paper reformed, upon due proof of what occurred at the time. . . .

"While the learned court below were not agreed upon the law as applicable to this motion, they refused it because it was not sustained by the evidence. There was nothing before the court upon which the affidavits could have been reformed. The evidence was general and vague in its character, and not confined to specific affidavits. The voters who took and subscribed the affidavits were not called. The affidavits could not be reformed by wholesale. Each separate paper required its independent proof. We cannot say the court below erred in refusing this motion."

In the present case each of the four voters whose affidavits were alleged to be defective was called as witnesses before the court and testified to the making of the affidavits, as were his vouching elector witness and the officers of the election board. Each of the 21 voters who could not fill out and subscribe to an affidavit, partly written and partly printed, because no affidavit blank forms were available was called and testified under oath as to his qualifications, stated orally under oath to the election board, as were his vouching elector witness and the election officers.

Section 1, art. VIII, of the Constitution having been amended eliminating the assessment and payment of a tax as a qualification for voting, section 4 of the Act of January 17, 1934, P. L. 236, 25 PS §1384, amending section 10 of the Act of 1874, supra, eliminated the assessment and payment of a tax as a qualification for voting.

The parts of this section pertinent to this contest read as follows:

"On the day of election, in any election district in which personal registration is not required, any person whose name shall not appear on the registry of voters, and who claims the right to vote at said election, shall produce at least one qualified voter of the district as a witness to the residence of the claimant in the district in which he claims to be a voter, for the period of at least two months immediately preceding said election, which witness shall be sworn or affirmed and subscribe a written or partly written and partly printed affidavit to the facts stated by him, which affidavit shall define clearly where the residence is of the person so claiming to be a voter; and the person so claiming the right to vote shall also take and subscribe a written or partly written and partly printed affidavit, stating, to the best of his knowledge and belief, when and where he was born; that he has been a citizen of the United States for one month, and of the Commonwealth of Pennsylvania; that he has resided in the Commonwealth one year, or, if formerly a qualified elector or a native born citizen thereof, and has removed therefrom and returned, that he has resided therein six months next preceding said election; that he has resided in the district in which he claims to be a voter for the period of at least two months immediately preceding said election; that he has not moved into the district for the purpose of voting therein. . . .

"Provided, That in case any person is allowed to vote at an election, who is not registered, but makes an affidavit which by reason of the failure to fully observe the requirements of this section is insufficient, in any contest growing out of said election it shall be lawful to correct any mistakes or supply any deficiencies in such affidavit, so as to show that the said person was in fact a qualified voter; but this shall not apply to non-registered voters who make no affidavit, or one which makes no attempt to comply with the law."

We, as an individual, are impressed by the extensive and scholarly brief of law covering the numerous questions involved in this contest filed by Mr. Carmen Marinaro, attorney for respondent, and also by his persuasive argument that the constitutional right of a citizen elector to cast his ballot and have it counted ought not to be denied, particularly when the voter, without fraud or negligence on his part or that of the election officers, has done all that it is reasonably possible to do under the circumstances to comply with the law in procuring his ballot. But we must determine this question not as an individual but as a court bound to administer the law as it is written and construed by the appellate courts, not only in the interest of or to preserve the right of the individual voter, but also to preserve intact and inviolate the rules laid down by law imposing a duty on the voter and on the election officers, and also to guarantee the purity of the ballot, and to prevent fraud and dishonesty in the conduct of elections, and, while we are convinced that these nonregistered voters acted honestly in casting the ballots complained of and did all they could reasonably do under the circumstances, and that the votes cast by each of them and received by the election officers were honestly cast, received and counted, we cannot escape the conclusion that the law which says that, before a nonregistered voter shall be permitted to vote, he shall file with the election officers an affidavit in writing or partly written and partly printed, in which he sets forth his qualifications as a voter, is mandatory and binding on the voter, the election officers and the court. To hold otherwise would open the way to fraud in the conduct of elections.

We therefore conclude that the vote of a nonregistered voter, cast without his having filed with the election officers an affidavit in writing or partly printed and partly written, complete or incomplete, is illegal and cannot be counted.

After evidence had been introduced by contestants tending to establish that 21 nonregistered voters had been

permitted to vote without having filed affidavits, and that an additional four nonregistered voters had been permitted to vote after filing defective or incomplete affidavits, the contestants were permitted by the court to call the said 25 voters and inquire of each of them how he or she voted or marked the ballot. All of them with one exception, who testified he voted a straight Republican vote, testified they voted a straight Democratic vote.

Counsel for respondent moved to strike from the record all testimony of these witnesses as to how or for whom each of them voted, for the following reasons: (1) Because of the constitutional requirement of secrecy of the ballot, and (2) because of the failure of contestant properly to plead said matters in his petition.

We are convinced that the first reason is without merit, as it appears clearly established in reported cases that when it had been proved that a voter voted illegally he may be required to testify as to how he voted in order that a correct count of legal votes may be made.

That the second reason is without merit is not so clear. Paragraph 5 of contestant's petition, which was filed on December 2, 1926, reads:

"That in the Second Ward of the Township of Butler, Butler County, Pennsylvania, 125 persons whose names were not recorded on the registry of voters for said district cast ballots, and that the number of affidavits as required by law in said cases and which were returned to the office of the Prothonotary of Butler County does not exceed 75 in number and that the remainder of said persons voted illegally and their ballots are invalid. Your petitioners ask permission of the court to file a more particular statement of the names of such persons upon their being granted permission by the court to open the envelope, examine the affidavit and ascertain the number of illegal votes cast, and for whom cast for the office of representative in the General Assembly and to incorporate said supplementary statement, together with the

270

names of those voting illegally so as to become a part hereof."

On December 18, 1936, contestant filed a supplement to the said paragraph 5 which contained the names of 25 voters alleged to have voted illegally and no other averment. We would have sustained the motion and stricken out the testimony had not an examination of the original petition disclosed the following averment in Paragraph 9:

"That the result of the election was materially affected by reason of the aforesaid, and otherwise would have resulted in the election of Albert B. McClester for the office of representative in the General Assembly."

We concluded that this averment coupled with paragraph 5 conferred jurisdiction, and for this reason refused the motion and noted an exception for respondent.

From Thomas H. Greer, Butler.