## Second Legislative District Election Contest (No. 2)

Before Valentine, P. J., Aponick, Flannery, Lewis and Pinola, JJ.

*Daniel J. Flood, James Lenahan Brown* and *Joseph Kasper,* for petitioners.

*Mitchell Jenkins, Nelson A. Bryan* and *Frank Slattery,* for respondent.

FLANNERY, J., for the court en banc, January 31, 1955.—On November 2, 1954, an election was held for the office of Representative in the General Assembly from the Second Legislative District of Luzerne County.

The computation made by the board of election accredited the Republican candidate, Harry "Jerry" Butler, with 8,802 votes and his Democratic opponent, Stanley Meholchick, with 8,796 votes and, accordingly, Butler was returned the winner by a margin of 6 votes.

On November 20, 1954, the petitioners here instituted a contest. Among various allegations of conspiracy, fraud, etc., it was charged that 26 specific votes cast for Butler were illegal and void and should be rejected. Twenty-three of these were cast in the Borough of Warrior Run and were said to be tainted by illegal assistance; 3 were cast in Hanover Township and the complaint here goes to faulty registration. We shall consider the 26 as in two categories and in due course will treat them in detail.

The matter came on for hearing before the undersigned. We limited contestants to the specific allegations involving the 26 ballots and proceeded to take testimony. At the conclusion of contestants' evidence counsel for the respondent objected as to the procedure. By a decision for the court by Valentine, P. J., handed down December 27, 1954, the hearing was continued to completion and the entire record submitted to the Court en banc before which argument was held and briefs submitted.

The basic facts are not, it seems, in controversy.

Many of the violations charged are freely admitted but counsel for respondent contend that these are technical violations, the onus of which is primarily on the election officers. It is their position that to invalidate the votes arising out of these violations would deprive the respective electors of their franchise. This they maintain we may not do.

Counsel for contestants contend the violations are shared by both the election officers and the voters; that they go to the very foundations of honest elections; that the respective votes must be rejected.

We shall consider first the 23 votes in Warrior Run.

In each instance here the voter was assisted by Stanley Nadwodny. Stanley Nadwodny is a political leader in the municipality; he was one of the sponsors of Butler's candidacy; on election day he worked in his behalf, and throughout the contest hearing the two were present together in court and maintained close coöperation. There may be criticism of Nadwodny's zeal but his loyalty is above question and we have no hesitancy in concluding that these 23 votes were cast for Butler.

What of their legality and validity?

The Constitution, article 8, sec. 4, provides:

"All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: *Provided, That secrecy in voting be preserved.*" (Italics supplied.)

It must be conceded that the cornerstone of honest elections is secrecy in voting. A citizen in secret is a free man; otherwise, he is subject to pressure and, perhaps, control.

One method by which this guarantee of freedom can be defeated is the device of illegal assistance. To prevent this the legislature has thrown safeguards around the right to assistance which are designed to aid those

genuinely handicapped, protect those who are vulnerable to pressure, and deter those who would exploit the electorate.

Assistance may be had only after the voter has stated, under oath, his need for assistance and why he requires it: June 3, 1937, P. L. 1333, art. XII, sec. 1218, 25 PS §3058. An election officer who permits a voter to be accompanied into the voting machine booth when such voter has not made, under oath, the statement required, is guilty of a misdemeanor: June 3, 1937, P. L. 1333, art. XVIII, sec. 1831, 25 PS §3531.

Not one of the 23 voters whose votes are under consideration was given or took that oath. Yet each received the forbidden assistance.

The statute further provides that any person who shall go into the voting machine booth with another while voting or be present therein while another is voting, *except in strict accordance with the provisions of the law,* shall be guilty of a misdemeanor: June 3, 1937, P. L. 1333, art. XVIII, sec. 1830, 25 PS §3530. (Italics supplied.)

The offending poll worker, in this case, Stanley Nadwodny, did go into the machine booth with each of the 23 voters in violation of this section of the act.

In this connection there is a specific duty laid on the voter also. It is provided that any elector who shall allow the face of the voting machine voted by him to be seen with the apparent intention of letting it be known how he is about to vote, *or does so without having made the required declaration of his disability, under oath,* shall be guilty of a misdemeanor: June 3, 1937, P. L. 1333, art. XVIII, sec. 1830; 25 PS §3530. (Italics supplied.)

Each of the 23 electors whose votes are under consideration ignored that duty and permitted the face of the voting machine to be seen by another in violation of this section of the act.

It has been suggested that the provisions of the statute to which we have referred are directory only and not mandatory. With this we cannot agree. The language is clear, explicit and imperative. It admits of no qualification. It carries a penalty for failure to observe it. Such is the established rule of construction that where a legislative provision is accompanied by a penalty for the failure to observe it, the provision is mandatory: Contested Election of Owen Cusick, 136 Pa. 459.

It has been suggested by way of extenuation of the charges made that no wilfulness has been shown, no intent to violate the Election Code. Without conceding either the truth or the materiality of that contention we must challenge its validity. The purpose to be achieved by the legislation seeking to protect the ballot is so paramount that neither wilfulness or intent is of consequence. As the Superior Court recently said:

"The definition of illegal assistance in voting is set forth in Section 1830 of the Election Code, 25 P. S. 3530, which provides in part as follows: '. . . any person who shall go into the voting compartment or voting machine booth with another while voting or be present therein while another is voting, or mark the ballot of another or prepare the voting machine for voting with another, except in strict accordance with the provisions of this Act . . . shall be guilty of a misdemeanor.' . . . Defendant's contention raises the question: Does section 1830 make guilty knowledge an essential element of the crime of rendering illegal assistance to a voter?

"The reasons for sustaining legislation which makes certain acts crimes and punishable as such without regard to defendant's motive, intent, reasonableness or good faith, are stated to be: (1) To require a degree of diligence for the protection of the public and

(2) convenience of enforcement. Both of these reasons are applicable to the question before us. As stated by the learned Court below: 'Secrecy of the ballot is so ingrained in our democratic process that *anyone should know he has no right inside the voting booth with another voter without express legal authority. . . . The restrictions upon giving assistance are in furtherance of the secrecy of the ballot. . . .* We conclude, therefore, that it was the legislative intention not to require a guilty knowledge that the assisted voters were not qualified for assistance as a condition precedent to guilt under section 1830": Commonwealth v. Fine, 166 Pa. Superior Ct. 109, 113 and 114. (Italics supplied.)

We have, then, mandatory provisions of law which were criminally violated in getting these 23 voters into the machine. How can such votes have validity?

An outstanding legal authority in discussing these principles has answered that question in the following language:

"The purpose of statutory provisions requiring oath or declaration of the voter as to his disability or other ground for assistance as a condition precedent to the rendering of assistance is to prevent fraud at elections, and such statutory provisions have been construed as mandatory in character. Where the statute requires an oath or declaration of the voter as a mandatory condition precedent to assistance in the preparation of his ballot, ballots cast with assistance but without the prior showing by oath or declaration are invalid, and the ballot should be rejected although the election official was innocent of wrong intent in rendering the unauthorized assistance, . . .": 29 C. J. S. 294 and 295.

There are jurisdictions which have sought to qualify this principle of interpretation or to soften its impact by holding the violation a crime but the vote valid. These represent a minority view. Pennsylvania holds

to the majority view, the interpretation as quoted from the text, and this court, by Fuller, P. J., In re Contested Election of Tinner, 17 Luz. 259, 260, has adopted it:

"We cannot subscribe to the doctrine . . . that falsehood can create the right (i.e. assistance) or that a vote cast by the direct instrumentality of a crime can possibly preserve its virtue." (Parenthesis supplied.)

In formulating his conclusion the jurist referred to, and relied on, an opinion of the Lackawanna County courts which discusses in detail not only the principle but the policy and reason on which it is founded. That authority holds:

"It is too plain for argument that where an act is forbidden under a penalty or is made a misdemeanor punishable by fine and imprisonment, not only the act itself but whatever is dependent upon it, so far as the person who does it is concerned, is illegal. The purpose of the punishment is to deter if possible from the commission of the act, and the very fact that it is considered necessary to go this far in the attempt to prevent it, shows how subversive it is regarded of the provisions of the law which it is desired to protect. To allow the forbidden act to stand would therefore be to fly in the face of the law which condemns it, the person who does the act being liable to punishment and yet the act itself remaining unaffected. But it is the act that is the guilty thing, and it is this which the statute seeks to eradicate, and the law would be weak and despicable indeed if in utter disregard of it, the act, or that into which it enters, is held good notwithstanding its concededly illegal character. The two things involve such a contradiction of terms as to amount to a plain absurdity.

"The application of this to the case in hand is evident. Every voter who falsely declares that he is

under a disability which requires assistance in the preparation of his ballot, violates the statute and lays ground for his own prosecution and punishment, and thereby of necessity disqualifies himself as a voter, because he votes illegally. As part of the act of voting he does that which the law declares in its most positive terms he shall not do, and how with any regard for its provisions can this illegal act be accepted as of any legal force or validity? . . .": In re Contested Election M. F. Fadden, 3 Lack. L. N. 74, 76, 77.

And there are analogous decisions in our appellate courts. Under previous legislation a voter whose name was not on the registry could vote upon affidavits. In the case of In re Contested Election of Martin McDonough, 105 Pa. 488, 495, votes were received from electors otherwise qualified but without the necessary affidavits. The Supreme Court held:

". . . The election officers have no power to waive the production of the essential proofs. And the vote of such person, offered and received without the requisite affidavits, is illegal and cannot be made legal at a subsequent investigation in the courts. . . .

". . . He cannot lawfully vote without the proofs; they commit a crime if they receive his vote without. The law deprives no elector of his right of suffrage. If his vote be thrown out of the count because it was offered and received in violation of law, the deprivation results from his own wrongful act. . . ."

The Pennsylvania courts have not departed from the ancient way of Biblical times. It is still the essence of wisdom that an evil tree can not bring forth good fruit.

The conclusion which flows from these discussions is inescapable. The 23 votes specified in the petition as cast for candidate Butler with the assistance of Nadwodny are illegal and void and we so find. They will be rejected and his total vote will be reduced by that number.

We cannot leave this phase of the matter without calling attention to the cavalier indifference with which the regulations governing assistance were generally disregarded. The judge of election, Soboleski, made no distinction between parties or persons. The requirements of the law were blithely ignored and all were treated alike. As a result there are an additional 13 illegal votes in the tabulation—some Democratic and some Republican—but since their validity was not challenged nor their recipient identified, they are beyond the purview of this decision.

However, speaking for the entire court, we take this occasion to condemn any and all violations of the Election Code whether they be technical violations of the letter of the law or material violations of the spirit of the law. We affirm our determination to stamp them out whenever and wherever they may be brought to light.

It is appropriate in this connection to advert briefly to some other omissions that appear in the evidence and were argued extensively by counsel.

The Election Code of June 3, 1937, P. L. 1333, art. XII, sec. 1210, 25 PS §3050, provides:

(a) That each elector who desires to vote shall first sign a voter's certificate for comparison with his permanent registration, or, (b) if he is unable to do so, under conditions there set out, the same shall be prepared by one of the election officers and attested by the signature of such election officer.

Of the 23 electors whose votes are under discussion one signed such certificate. The names of the other 22 were written in their behalf by the assistor, Stanley Nadwodny, and an "X" added. These electors were said to have signed by mark. The law, however, is explicit as to how the voter's certificate shall be prepared and the method adopted here is outside the statute. It is simply another violation of the Code.

And it is a violation of the spirit as well as the letter of the law in view of the fact that there is in the testimony evidence that 16 of the 23 were able to sign their own names.

The code, art. XII, sec. 1218, subsection (c), 25 PS §3058, provides that the judge of elections shall personally keep a record of the assisted voters, the facts which entitle them to assistance, the assistor, etc., in a book to be furnished by the county board of elections. This task the judge of elections in the instant case assigned to another, contenting himself with signing the result.

The violation here would appear more technical in its nature. Nevertheless the purpose of the provision is important. It is one detail in the broad picture. If kept in good faith the record will correspond to the voter's certificate and the registration and by strict observance of the statutory requirements fraud will be deterred.

As a warning to election officers who might be lax in observing the statute we point out that section 1850 of the Code (June 3, 1937, P. L. 1333, 25 PS §3550), provides a penalty for the violation of any requirement for which a penalty is not specifically set out in the particular section violated.

We have not considered each vote on its merits. Such is unnecessary to our conclusions. It would appear from the record that one attempted vote, that of a mentally deficient youth, was clearly void per se. The exploitation of this young man is to be deplored. It would appear that some of these electors would have been entitled to assistance upon compliance with the law. It would appear that others were physically and intellectually able to vote on their own.

Likewise as to the registrations. There are discrepancies on many of the permanent registration records of these 23 such as unexplained alterations,

amendments to provide for after acquired illiteracy, and the absence of supporting affidavits necessary for legal assistance. Much testimony was taken and argument heard. But since the invalidity of these votes, as we have found them to be invalid, does not depend on the registration, these discrepancies are no part of this decision.

We come now to the three electors in Hanover Township. The votes of two of these, Carl Keiser and Florence Keiser, his wife, are attacked on the basis of residence. It appears that in the previous spring the Keisers moved to a new address within the same ward and, although no change was made on the registration books, they voted not only at the Primary but also at the General Election which is the subject of the present litigation.

The code, as amended, provides that an elector who removes his residence from one place to another within the same election district and who has not yet filed a removal notice with the commission may be permitted to vote at the primary or election *next following such removal*, if at the time he files with the judge of election a signed removal notice: Act of April 29, 1937, P. L. 487, sec. 26, as amended, 25 PS §951-26. But there is no provision for subsequent voting unless the act is complied with. The Keisers voted at the primary without filing the required removal notice and it is argued that the right to vote again was extinguished until compliance with the act. The contestants maintain, therefore, that the vote at the general election was improper, illegal and void.

We are back to our first principle. Is the statute directory or mandatory? For the reasons advanced above, that is, the absence of specific language and a penalty for its violation, we are constrained to conclude that the act is directory only. We are fortified in this reasoning by the constitutional proviso which

reads, art. VIII, sec. 1, subsection 3, as amended November 7, 1933:

"He or she shall have resided in the election district where he or she shall offer to vote at least two months immediately preceding the election."

Accordingly, the challenge made to these votes is overruled.

There remains then the ballot cast by Mary Surovitz. This elector was duly registered as Mary Surovitz. Subsequently she married one Burnoff and continued to vote without changing her registration. Two years ago her hubsand died. The registration remained as originally entered and Mrs. Burnoff voted as Mary Surovitz.

We are satisfied that this was irregular and contrary to the instructions given election officers generally by Harry Williams, chief clerk of the Registration Bureau. Blank affidavits were furnished the election boards to be filled out by women who marry subsequent to their registration so that the records will reflect the correct status of the elector.

But we find no mandatory provision of the code requiring compliance and none has been pointed out to us. And while the Superior Court touched on the matter in Castle Shannon Borough Annexation Case, 160 Pa. Superior Ct. 475, it is to be noted that it refrained from deciding the elector there to be incompetent. We shall refrain here also. There is no question of identity. This was the same voter. Her vote was regular in every other way. The oversight was apparently innocent and in the absence of a statutory prohibition, mandatory in character, we are loath to penalize this citizen.

Accordingly, the challenge as to her is overruled and the vote stands.

One final question must be decided. Respondent contends the record fails to show petitioners voted for this

office at the election, which he argues is a jurisdictional requirement. He does not deny their qualifications as electors nor, as we view the record, does he deny that they voted but he contends this is not enough.

Contestants' petition avers that they voted in this election and voted for this particular office. They averred more than was necessary. It is sufficient in law that they voted in the election: Wylie's Appeal, 239 Pa. 510. The rest will be treated as surplusage.

Perhaps more to the point is the ruling by Justice Sadler in a situation analogous to our own:

". . . In the answer filed, . . . it was averred generally, that the signers of the petition were not duly qualified, but no specification of the persons alleged to be improperly joined appeared, nor was it stated, or any attempt subsequently made to prove, that those objected to were sufficient in number to reduce the petitioners to less than the twenty-five required by the Act of Assembly. Complaint now made on this ground is, therefore, without merit": Haverford Township Election, 282 Pa. 504, 506, 507.

In the instant case not only was there no denial of the qualifications of contestants but a request for a bill of particulars by respondent omitted any reference to this aspect of the matter. Further, a representative of the election board was present in court under subpoena with proper proof of the contestants' qualifications. Since the averment of petitioners was not controverted we considered formal proof unnecessary then; under the authorities cited and the facts we consider it unnecessary now. It has been satisfactorily established both by the pleadings which were placed in the record and by the conduct of the parties.

We then decide which of the candidates received the greatest number of legal votes and is entitled to the election.

The vote of Harry, "Jerry" Butler computed as 8,802 is reduced 23 in number by subtracting those votes found to be invalid. His number of legal votes is, therefore, 8,779.

The vote of Stanley Meholchick remains as originally returned. His number of legal votes is, therefore, 8,796.

Therefore, we conclude that Stanley Meholchick is entitled to election for the office of representative in the General Assembly from the second legislative district of Luzerne county for the term beginning January, 1955.