IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny County | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 379 C.D. 2023 |
| | : | |
| Matthew Van Bibber, | : | |
|       Appellant | : | |
| | | |
| Allegheny County | : | |
| | : | |
| v. | : | No. 380 C.D. 2023 |
| | : | |
| Patricia Weaver, | : | |
|       Appellant | : | Argued: October 9, 2024 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED:  December 17, 2024

      In these consolidated matters, Matthew Van Bibber and Patricia Weaver (individually Van Bibber and Weaver, and collectively, Requesters) appeal the Court of Common Pleas of Allegheny County's (Common Pleas) March 24, 2023 and March 31, 2023 orders.[1] Through those orders, Common Pleas ruled that the

---

[1] These orders are respectively dated March 23, 2023, and March 31, 2023, but each order was docketed the day after the date listed thereon.

Pennsylvania Election Code[2] prevented Requesters from using the Right-to-Know Law (RTKL)[3] to obtain images of mail-in ballots that had been cast in the 2020 General Election. We reverse.

## I. Background

On March 18, 2022, Van Bibber submitted a request to Allegheny County (County) for "digital copies of the Allegheny County 2020 General [Election] ballots." Reproduced Record (R.R.) at 40a. The County responded on March 25, 2022, by invoking its right to a 30-day extension, before the County's open records officer eventually denied Van Bibber's request on April 14, 2022.[4] *Id.* at 40a, 42a. Weaver then submitted her own, practically identical request to the County on April 19, 2022, which the County's open records officer denied on April 26, 2022.[5] *Id.* at 12a-13a. Therein, the officer explained that the records sought—which she characterized as "images of voted ballots" or "cast vote records"—are considered

---

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[3] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[4] Under certain circumstances, Section 902 of the RTKL permits an agency to extend the permitted response time, which is normally 5 business days, by up to an additional 30 calendar days. 65 P.S. § 67.902.

[5] In her request, Weaver sought "digital copies of all ballots counted for the November 2020 election for all races for Allegheny County in TIFF format" as well as "digital copies of all ballots in PDF format for districts in alphabetical order after Liberty-District 1 to but not including McKees Rocks Ward District 1." R.R. at 12a. TIFF (an abbreviation of "tagged image file format") is a digital image format that is "widely supported by image viewing applications." Roger S. Haydock, *Electronically Stored Information: What Hath God Wrought?*, 6 WM. MITCHELL J. L. & PRAC. 2 (2013).

"contents of ballot boxes" and therefore "not viewable" pursuant to Section 308 of the Election Code, 25 P.S. § 2648.[6] *Id.*

Requesters then appealed these denials to the Office of Open Records (OOR) in early May 2022. *Id.* at 15a, 44a. In response, the County submitted an affidavit from David Voye, Manager and Open Records Officer of the County's Elections Division, in which Voye restated the County's position that Section 308 prohibited the release of cast ballots. *Id.* at 23a, 57a. OOR subsequently issued two substantially identical Final Determinations, through which it affirmed the County's denials in part and reversed them in part. *Id.* at 27a, 152a. Therein, OOR agreed with the County that images of ballots that are cast in person are the contents of ballot boxes, which therefore shields those ballots from RTKL requests by virtue of Section 308 of the Election Code. *Id.* at 25a-28a, 152a-53a. OOR also noted, however, that Section 1307-D(a) of the Election Code expressly states that "[a]ll official mail-in ballots" are "public records[.]" *Id.* at 28a, 153a (quoting 25 P.S. § 3150.17(a)).[7] Accordingly, OOR concluded images of cast mail-in ballots are not protected by Section 308 from disclosure to the public and that the County had to provide Requesters with such images upon request. *Id.* at 29a, 154a.

---

[6] In relevant part, Section 308 provides that the records of "board[s] of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, *except the contents of ballot boxes and voting machines and records of assisted voters*," shall be open to public inspection. 25 P.S. § 2648 (emphasis added).

[7] Added by the Act of October 31, 2019, P.L. 552, No. 77 (Act 77).

The County appealed OOR's Final Determinations to Common Pleas, as to OOR's disposition of the cast mail-in ballot image issue.[8] In response, Common Pleas then convened a hearing on September 22, 2022.[9] At the hearing, the County argued that the Election Code shielded cast ballots against RTKL requests, regardless of whether those ballots were cast in-person or via mail. *Id.* at 177a-78a (citing 25 P.S. § 2648). Requesters countered that the General Assembly had expressly declared through Section 1307-D(a) of the Election Code that cast mail-in ballots are public records and, thus, had rendered such ballots obtainable through RTKL requests. *Id.* at 194a-97a.

The County also presented testimony from Voye. *Id.* at 201a, 204a. Voye recalled that he had received an email from the Commonwealth's Department of State on November 8, 2021, regarding RTKL requests for election records.[10] *Id.* at 225a. Through this email, the Department of State had advised Voye that its position was that the Election Code shields completed ballots from public inspection, regardless of whether those ballots are mailed-in or cast in-person at polling places.

---

[8] Common Pleas subsequently consolidated these appeals on September 1, 2022. R.R. at 157a.

[9] Common Pleas was the ultimate finder of fact in this matter, as ordained by the RTKL and consequently conducted a *de novo*, plenary review of OOR's Final Determinations. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

[10] Voye was referring to an email message sent by Jessica Mathis, Director of the Department of State's Bureau of Elections and Notaries to the Commonwealth's county election officials. *See* R.R. at 278a-79a. Therein, Mathis explained the Department of State's position that the Election Code exempts from public inspection "the contents of ballot boxes and voting machines and records of assisted voters." *Id.* (citing 25 P.S. § 2648). Mathis advised the officials that Section 308 "**can be used to deny any request to inspect voted ballots, or to receive copies of voted ballots, or to examine voting machines, as the Election Code specifically exempts these records and equipment from public disclosure**." *Id.* (emphasis in original).

*Id.* at 208a. Voye recalled that, on the advice of the County's law department, the Elections Division had previously allowed one RTKL requester to view scanned images of ballots that had been completed by voters.[11] *Id.* at 223a-24a. However, the Elections Division had since adopted the Department of State's position that only blank ballots, not completed ones, were subject to public inspection. *Id.* at 209a. As a result, Voye had decided to deny subsequent RTKL requests for scanned images of completed ballots. *Id.* at 224a.

Common Pleas then issued two orders, on March 24, 2023, and March 31, 2023, respectively, through which it reversed OOR's disposition of the cast mail-in ballot issue. Requesters then appealed each of these orders to Court shortly thereafter, whereupon we consolidated both appeals on May 5, 2023.

## II. Discussion[12]

Requesters challenge Common Pleas' orders on two bases, which we summarize as follows. First, Requesters are entitled to the sought-after images of cast mail-in ballots, because such images qualify as public records pursuant to Section 1307-D(a) of the Election Code. Requesters' Br. at 12-16. Second, even if

---

[11] In *William Towne v. Allegheny County* (OOR Dkt. No. AP 2022-1975, filed Sept. 28, 2022), a requester sought from the County access to "scans of declaration envelopes for mailed-in . . . ballots in the 2022 primary election(s)," as well as an opportunity to view the ballots' original envelopes in person at the Elections Division's offices. The County initially denied the request, but informed OOR on the requester's appeal that it had decided to grant access. *Id.* Because the County did not contest the public nature of the requested records, OOR determined that it must provide them to the requester. *Id.*

[12] When a case under the RTKL reaches this Court from a court of the common pleas, our standard of review is limited to determining whether findings of fact are supported by substantial evidence, or whether the lower court committed an error of law or abuse of discretion in reaching its decision. *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011). The scope of our review is plenary. *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1029 n.3 (Pa. Cmwlth. 2011).

Section 1307-D(a) does not apply to these images, it remains that Section 308's protections only apply to cast ballots while they are physically held in a ballot box or voting machine; once those ballots are removed therefrom, they (and images thereof) constitute public records that can be obtained through RTKL requests. *Id.* at 16-19.

Generally speaking, the purpose of the RTKL is "to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials[,] and make public officials accountable for their actions." *Off. of Governor v. Raffle*, 65 A.3d 1105, 1107 n.1 (Pa. Cmwlth. 2013). Accordingly, local agencies are statutorily required to "provide public records [to individuals who request them] in accordance with [the RTKL]." Section 302(a) of the RTKL, 65 P.S. § 67.302(a). However, that does not mean that all local agency records are "public" and eligible for dissemination upon request. Per Section 305(a) of the RTKL:

> A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
>
> . . . .
>
> (3) the record is exempt from disclosure under any other [f]ederal or [s]tate law or regulation or judicial order or decree.

65 P.S. § 67.305(a); *accord* Section 102 of the RTKL, 65 P.S. § 67.102 (defining "public record" in relevant part as "[a] record, including a financial record, of a Commonwealth or local agency that . . . (2) is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree"). In other words, the RTKL's presumption that all records possessed by a local or state agency are public in nature, and are thus disclosable to a requester, yields where a statutory exemption exists for a certain kind of record.

Through their first argument, Requesters posit that Section 1307-D(a) of the Election Code dictates that images of cast mail-in ballots are public records. This assertion presents a pure question of statutory interpretation; thus, "our standard of review [here] is *de novo*, and our scope of review is plenary and non-deferential." *Crown Castle NG E. LLC v. Pa. Pub. Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020).

> The object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful a statute's plain language generally provides the best indication of legislative intent. *See Com*[.] *v. McClintic*, . . . 909 A.2d 1241 ([Pa.] 2006). Thus, statutory construction begins with examination of the text itself. [*Se.*] *Pa. Transp. Auth. v. Holmes*, 835 A.2d 851 (Pa. Cmwlth. 2003).
>
> In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa. C.S. § 1903(a). Further, every statute shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa. C.S. § 1921(a).
>
> Moreover, although we must "listen attentively to what a statute says[,] [o]ne must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, . . . 788 A.2d 955, 962 ([Pa.] 2001). We may not insert a word the legislature failed to supply into a statute. *Girgis v. Bd. of Physical Therapy*, 859 A.2d 852 (Pa. Cmwlth. 2004).

*Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 175-76 (Pa. Cmwlth. 2007). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). "However, if we deem the statutory language ambiguous, we must then ascertain the General Assembly's intent by statutory analysis, wherein we may consider numerous relevant factors." *Bowman v. Sunoco, Inc.*, 65 A.3d 901, 906 (Pa. 2013) (citing 1 Pa. C.S. § 1921(c)). "An ambiguity exists

when language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested." *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 510 (Pa. Cmwlth. 2014). Regardless of whether a statute is deemed ambiguous or not, our rules of construction forbid a court from adopting an interpretation that will produce "a result that is absurd, impossible of execution[,] or unreasonable." 1 Pa. C.S. § 1922(1). Furthermore,

> [w]hen construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. *Com. v. Mayhue*, 639 A.2d 421, 439 (Pa. 1994). Statutory language must be read in context, "together and in conjunction" with the remaining statutory language. [*Pa. Gaming Control Bd.*] *v. Off. of Open Recs.*, 103 A.3d 1276, 1284-85 (Pa. 2014) (citing *Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 4 A.3d 610, 622 (Pa. 2010)).
>
> . . . .
>
> A fundamental principle in statutory construction is that we must read statutory sections harmoniously. *Off. of Open Recs.*, 103 A.3d at 1284-85. Parts of a statute that are *in pari materia*, *i.e.*, statutory sections that relate to the same persons or things or the same class of persons and things, are to be construed together, if possible, as one statute. 1 Pa. C.S. § 1932. "If they can be made to stand together, effect should be given to both as far as possible." *Off. of Open Recs.*, 103 A.3d at 1284 (quoting *Kelly v. City of Phila.*, 115 A.2d 238, 245 (Pa. 1955)). In ascertaining legislative intent, statutory language is to be interpreted in context, with every statutory section read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute" as a whole. *Bd. of Revision of Taxes*, 4 A.3d at 622. We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions, to be effective. 1 Pa. C.S. § 1922. Importantly, this presumption requires that statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so. *Cozzone ex rel. Cozzone v. Workers' Comp. Appeal Bd.*

*(PA Mun./E. Goshen Twp.)*, 73 A.3d 526 (Pa. 2013); *Off. of Open Recs.*, 103 A.3d at 1284-85.

*Tr. Under Agreement of Taylor*, 164 A.3d 1147, 1155, 57 (Pa. 2017) (cleaned up).

The validity of Requesters' first argument hinges upon the interplay between two aforementioned Election Code provisions: Section 308 and Section 1307-D(a). The former, Section 308, reads as follows:

> The records of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, **except the contents of ballot boxes and voting machines and records of assisted voters**, shall be open to public inspection, except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are not necessarily being used by the board, or its employes having duties to perform thereto: Provided, however, That such public inspection thereof shall only be in the presence of a member or authorized employe of the county board, and shall be subject to proper regulation for safekeeping of the records and documents, and subject to the further provisions of this act: And provided further, That general and duplicate returns, tally papers, affidavits of voters and others, and all other papers required to be returned by the election officers to the county board sealed, shall be open to public inspection only after the county board shall, in the course of the computation and canvassing of the returns, have broken such seals and finished, for the time, their use of said papers in connection with such computation and canvassing.

25 P.S. § 2648 (emphasis added). The latter, Section 1307-D(a), states:

> **All official mail-in ballots,** files, applications for ballots and envelopes on which the executed declarations appear and all information and lists **are designated and declared to be public records** and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military

9

> elector be made public which is expressly forbidden by the Department of Defense because of military security.

25 P.S. § 3150.17(a) (emphasis added). The phrase "official mail-in ballots," which is of critical import in this matter, is neither defined in this statutory provision nor anywhere else in the broader Election Code. It is thus facially unclear whether this term refers to completed ballots or uncompleted ballots. Even so, the meaning of this phrase is clear. All of the other items (applications, files, filled-out envelopes, lists, etc.) mentioned in Section 1307-D(a) refer to materials relating to the process that produces a completed mail-in ballot; it would be a strange thing, then, to believe that the General Assembly would have omitted those ballots themselves from this slate of covered materials. Furthermore, Section 1307-D(a) expressly restricts dissemination of identifying information; such concerns would not be present with regard to uncompleted ballots themselves, as such ballots obviously do not contain cast votes. Given this, the most logical reading of "official mail-in ballots" is that it refers to *completed* mail-in ballots, rather than those that are uncompleted.

This reading creates an apparent conflict between Section 308 and Section 1307-D(a). The former shields completed ballots and digital copies thereof from RTKL requests once those ballots have been deposited into a ballot box or recorded through a voting machine. *See Honey v. Lycoming Cnty. Offs. of Voter Servs.*, 312 A.3d 942, 950-54 (Pa. Cmwlth. 2024), appeal granted (Pa., No 163 MAL 2024, filed Oct. 7, 2024). The latter, however, flatly establishes without qualification that completed mail-in ballots are public records. The conflict, therefore, is between the general terms of Section 308 and the more specific language of Section 1307-D(a). Per Section 1933 of the Statutory Construction Act of 1972:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two

10

provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa. C.S. § 1933.

> In order to harmonize these ostensibly contradictory parts of the Election Code, we conclude that Sections 1307-D(a) . . . of the Election Code create[s] [an] exception[] to Section 308's ballot protections. [This] exception[] establish[es] that completed . . . mail-in ballots are to be treated as public records once those ballots have been removed from the ballot box or voting machine, and that those ballots can be obtained through an RTKL request as long as they follow the Election Code's rules of disclosure and do not include any information that identifies (or is reasonably likely to facilitate the identification of) the individuals who cast those ballots.

*Previte v. Erie Cnty. Bd. of Elections*, 320 A.3d 908, 917 (Pa. Cmwlth. 2024), *pet. for allowance of appeal filed* (Pa., No. 230 WAL 2024, filed Aug. 29, 2024).

### III. Conclusion

In light of the foregoing analysis, we conclude that Common Pleas erred by ruling that images of completed mail-in ballots are not public records that can be obtained through an RTKL request, and consequently reverse Common Pleas' March 24, 2023 and March 31, 2023 orders.[13]

_____
ELLEN CEISLER, Judge

---

[13] We decline to reach Requesters' remaining argument due to our resolution of these appeals in their favor.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny County | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | No. 379 C.D. 2023 |
| | : | |
| Matthew Van Bibber, | : | |
|       Appellant | : | |
| | | |
| Allegheny County | : | |
| | : | |
| v. | : | No. 380 C.D. 2023 |
| | : | |
| Patricia Weaver, | : | |
|       Appellant | : | |

# **O R D E R**

AND NOW, this 17th day of December, 2024, the Court of Common Pleas of Allegheny County's March 24, 2023 and March 31, 2023 orders are hereby REVERSED.

_____

ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allegheny County                        :    **CASES CONSOLIDATED**
                                        :
                v.                      :    No. 379 C.D. 2023
                                        :
Matthew Van Bibber,                     :
                        Appellant       :


Allegheny County                        :
                                        :
                v.                      :    No. 380 C.D. 2023
                                        :    Argued:  October 9, 2024
Patricia Weaver,                        :
                        Appellant       :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


<u>OPINION NOT REPORTED</u>


**DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER**                    **FILED: December 17, 2024**

The right to ballot secrecy is a keystone of our democratic process and a protection long enshrined in our state Constitution.  PA. CONST. art. VII, § 4.  Since the latter part of the nineteenth century, the concept of the "secret ballot" has taken root in each of our sister states through the form of either a constitutional mandate

or by statute.[1]  Through ballot secrecy, voters can be sure that their voices are heard at the ballot box without fear of voter intimidation or coercion, which are increasingly important concerns in our turbulent political environment.  Now more than ever, we must preserve ballot secrecy to ensure that the right to vote is never chilled in our Commonwealth.

I believe that permitting disclosure of copies of voted mail-in ballots[2] through a right-to-know request made under the Right-to-Know Law (RTKL),[3] in conjunction with the disclosure requirements of Section 1307-D(a) of the Pennsylvania Election Code (Election Code),[4] would violate the ballot secrecy protections afforded under article VII, section 4 of the Pennsylvania Constitution (the Ballot Secrecy Clause), PA. CONST. art. VII, § 4.[5]  Moreover, given the important constitutional rights implicated here, I would further hold that in all instances where

---

[1] *See Silberberg v. Bd. of Elections of New York*, 272 F. Supp. 3d 454, 470 (S.D.N.Y. 2017) ("[A]n examination of the history of election regulation in this country reveals a persistent battle against two evils:  voter intimidation and election fraud.  After an unsuccessful experiment with an unofficial ballot system, all 50 States, together with numerous other Western democracies, settled on the same solution:  a secret ballot . . . .") (quoting *Burson v. Freeman*, 504 U.S. 191, 206 (1992)).

[2] In this dissent, any discussion of voted mail-in ballots applies in equal force to voted absentee ballots.

[3] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[4] Act of June 3, 1937, P.L. 1333, *as amended*, added by the Act of October 31, 2019, P.L. 552, 25 P.S. § 3150.17(a).  Section 1307-D(a) of the Election Code provides:

> (a) General rule.--All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records and shall be safely kept for a period of two years, except that no proof of identification shall be made public, nor shall information concerning a military elector be made public which is expressly forbidden by the Department of Defense because of military security.

*Id.*

[5] "A statute must be construed in such manner, if possible, as to bring it in harmony with constitutional requirement[s]." *Commonwealth v. McCoy*, 172 A.2d 795, 798 (Pa. 1961) (citation omitted).

voter information is subject to disclosure through an RTKL request or a provision of the Election Code, that the affected voter be provided notice that their voter information is subject to disclosure and further provided an opportunity to object to such disclosure at any hearings and through the administrative appeal process. I am also not convinced that redaction would sufficiently protect this information. Because I would, therefore, affirm the Orders of the Court of Common Pleas of Allegheny County (common pleas), I must, respectfully, dissent.

The constitutional right to ballot secrecy in this Commonwealth is well-established and has existed in some form since 1874. *See* PA. CONST. art. VII, § 4 ("All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: **Provided, That secrecy in voting be preserved**.") (emphasis added); *see also PG Publ'g Co. v. Aichele,* 705 F.3d 91, 109-10 (3d Cir. 2013) (recounting the history of voting methods in the United States and Pennsylvania's gradual transition from openness in voting to ballot secrecy). "[S]ecrecy in voting [is] protected expressly by [a]rticle VII, [s]ection 4 of [the Pennsylvania Constitution]." *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 379 (Pa. 2020). In accordance with this constitutional mandate, our Supreme Court has opined that "[m]aintaining the secrecy of an elector's vote is supported by a fairly straightforward rationale, namely, that '[a] citizen in secret is [] free [] otherwise [the citizen] is subject to pressure and, perhaps, control' . . . . [and] [s]uch secrecy has historically served as a bastion to the integrity of the election franchise." *McLinko v. Dep't of State* (*McLinko II*), 279 A.3d 539, 577 (Pa. 2022) (quoting *In re Second Legis. Dist. Election*, 4 Pa. D. & C. 2d 93, 95 (1956)).

By 1891, the General Assembly enacted the Ballot Reform Act,[6] commonly referred to as "The Baker Ballot Law," where the "so-called Australian ballot system was first introduced in Pennsylvania." *McLinko v. Department of State*, 270 A.3d 1243, 1255 (Pa. Cmwlth. 2022) (*McLinko I*), *rev'd*, *McLinko II*, 279 A.3d 539; *see also Super v. Strauss*, 17 Pa. D. 333, 336 (1908), *Case of Loucks*, 3 Pa. D. 127 (1893). Although challenged in *De Walt v. Bartley*, 24 A. 185 (Pa. 1892), as violative of the free and equal elections clause of the Pennsylvania Constitution, PA. CONST. art. I, § 5 (1874), our Supreme Court upheld the constitutionality of The Baker Ballot Law, succinctly summarizing its purpose and affirming the importance of ballot secrecy in our electoral system:

> The act provides for a secret ballot. That is manifestly its main purpose, and it is in entire harmony with article 1, [section] 5, [of the] Const[itution], which declares that 'elections shall be free and equal.' This means that every citizen shall have an equal right to cast a free ballot. This is the letter of the [C]onstitution, and it is a right which no legislature can interfere with. **The spirit of the [C]onstitution requires that each voter shall be permitted to cast a free and unintimidated ballot**. This the act of 1891 was intended to secure. **An election, to be free, must be without coercion of every description**. An election may be held in strict accordance with every legal requirement as to form, **yet if, in point of fact, the voter casts the ballot as the result of intimidation; if he is deterred from the exercise of his free will by means of any influence whatever, although there be neither violence nor physical coercion,—it is not a free and equal election**, within the spirit of the [C]onstitution. The framers of the act in question have evidently reached the conclusion that **the only adequate guaranty of free and equal elections, within the letter and spirit of the [C]onstitution, is absolute secrecy. They therefore have provided a secret ballot**.

*De Walt*, 24 A. at 186 (emphasis added). In 1901, the operative language in our current ballot secrecy provision, "[p]rovided, [t]hat secrecy in voting be preserved,"

---

[6] Act of June 19, 1891, P.L. 349.

was adopted. *McLinko I*, 270 A.3d at 1256. Through this amendment, the right to ballot secrecy was enshrined into our constitutional framework and, with the ratification of our current Constitution in 1968, ballot secrecy remains a key pillar of our electoral process.

Both this Court and our Supreme Court have considered challenges to ballot secrecy and opined on the limits to which ballot secrecy protections may serve to bar disclosure of a voter's ballot choices.

In *Appeal of Orsatti*, 598 A.2d 1341 (Pa. Cmwlth. 1991) (*Orsatti*), we considered a challenge to a trial court order declaring a winner of a primary election for district justice. The primary was held, and the election results were certified by the local election board, where the winner was nominated by a margin of six votes. *Id*. at 1342. The winner's opponent petitioned the trial court for a recount, alleging fraud or error in the computation of votes. *Id*. On appeal, we considered whether it was error for the trial court to refuse to permit independent voters to testify as to how they voted in a closed primary. In affirming the trial court, we reasoned, based on our analysis of the often cited case *Thomas A. Crowley—Election Contest*, 57 Dauphin Co. Rep. 120 (C.P. Pa. 1945) (*Crowley*), that "where the vote is actually illegal because one is not entitled to vote, testimony [on how one voted] may be compelled . . . . If, however, it is determined that the elector is entitled to vote, [one] cannot be compelled to testify and cannot be permitted to waive [one's] right to secrecy." *Id*. at 1343. We concluded that because an independent voter may not participate in a closed partisan primary, trial courts may compel testimony on how one voted when an individual is ineligible to vote, and this does not violate the ballot secrecy protections under the Pennsylvania Constitution. *Id*. at 1344.

In *In re Petition to Contest General Election for District Justice in Judicial District 36-3-03 Nunc Pro Tunc*, 670 A.2d 629 (Pa. 1996) (*In re District Justice*), our Supreme Court considered a challenge to a trial court order setting aside an election for district justice because ballots were altered between the initial vote tabulation and a recount. The trial court took testimony from five voters whose ballots were allegedly altered and found that while dicta in *Orsatti* provided that legal voters may not waive their right to ballot secrecy, this conclusion was based on *Crowley*, a case that also noted that circumstances may exist where a legal voter may testify on their own volition as to their ballot choices. *Id*. at 635. On appeal, our Supreme Court considered whether a legal voter may waive their right to ballot secrecy where election fraud is present. In affirming the trial court, the Supreme Court reasoned that where evidence clearly establishes that fraud was present regarding certain ballots, "the sanctity of the ballot is not best preserved by secrecy, but instead by allowing those whose legitimate votes were altered through no fault of their own to testify, if they so choose, regarding how they originally voted." *Id*. at 639. The Supreme Court concluded: "Therefore, we hold that, under these limited circumstances, where a vote has been properly cast but subsequently altered through no fault of the voter, the voter should be allowed to **voluntarily appear** and testify regarding how [they] originally voted." *Id*. (emphasis added).

In reading *Orsatti* and *In re District Justice* together, as the law stands today, a legal voter may not be compelled by a court or any other tribunal to waive the right to ballot secrecy afforded under our Constitution, but may, voluntarily, waive such right on their own volition. This reading is in line with this Court's prerogative of safeguarding the sanctity of the ballot by preserving the constitutional right to ballot secrecy.

Allegheny County (County) and The Secretary of the Commonwealth, Al Schmidt, and the Department of State (together, Department), contend that allowing the public disclosure of copies of voted mail-in ballots violates the ballot secrecy protections afforded to voters under the Ballot Secrecy Clause. (County's Supplemental (Suppl.) Brief (Br.) at 8) (Department's Suppl. Br. at 2, 11-12.) I agree.

The County asserts that if "mailed-in [sic] ballots are subject to public access, erosion of voter secrecy would immediately result. Anyone could compare voted mailed-in [sic] ballots with already-public records like applications for ballots and returned envelopes bearing executed voter declarations." (County's Suppl. Br. at 8.) The County further asserts that "[i]n precincts where a low number of voters requested mail-in ballots, especially in low turnout elections, someone could readily determine which ballot belonged to which voter, and therefore an individual voter's selections." (*Id*.)

The Department agrees, contending that the impact of our decision in *Previte v. Erie County Board of Elections*, 320 A.3d 908 (Pa. Cmwlth. 2024),[7] "causes a real threat that mail-in and absentee voters in smaller precincts will need to sacrifice their right to cast a secret ballot in exchange for choosing to vote in a certain manner."[8] (Department's Suppl. Br. at 2.) The Department asserts that our "organic charter"

---

[7] A Petition for Allowance of Appeal, (Pa., No. 230 WAL 2024, filed Aug. 29, 2024), is currently pending before the Supreme Court.

[8] In his instant concurrence, Judge Wolf addresses the concerns that he first raised in his concurrence in *Previte*, 320 A.3d at 919-22 (Wolf, J., concurring), reiterating that this Court, through a string of recent decisions, has prohibited the disclosure of ballots cast in-person, but permitted the disclosure of ballots cast by mail. *Allegheny County v. Van Bibber* (Pa. Cmwlth., Nos. 379-380 C.D. 2023, filed Dec. 17, 2024) (Wolf, J., concurring). Judge Wolf aptly notes that these differing decisions invoke equal protection concerns because mail-in and absentee voting are equal to (and should be treated as) casting a vote in-person at a voting place. *Id*., slip op. at MSW-1-2.

makes clear that secrecy in voting must be preserved, and "[s]ecrecy of voting, then, is a right that we all enjoy and the absence of a secret ballot 'would predictably chill the franchise by enabling voter intimidation.'" (*Id*. at 11 (citing *Previte*, 320 A.3d at 922 n.12) (Wolf, J., concurring).) The Department further asserts:

> While voted ballots are not supposed to contain stray marks or identifying information, the fact is that some counties and precincts are so small—and have so few mail-in and absentee votes cast—that a public production of voted ballots, when analyzed in comparison to other publicly available lists, could easily be used to find out who a specific voter voted for. For example, in the most recent 2024 Primary Election, given the numbers of mail-in and absentee ballots cast in certain smaller precincts, anyone looking at an actual voted ballot, while referencing the publicly available statewide mail and absentee voter list, would be able to absolutely identify or likely identify the identity of the voter who voted a particular ballot (and, thus, how they voted) in over 1,400 instances. Disclosure of this information, then, not only violates these voters' constitutionally guaranteed right of secrecy but also could certainly chill citizens from exercising their right to vote in this manner in the future. This would make it harder for Pennsylvanians, including those who are disabled or elderly, to vote.

(Department's Suppl. Br. at 11-12.)

These arguments are similar to the issues considered in *In re General Election of Nov. 4, 1975*, 71 Pa. D. & C.2d 83 (1975) (*General Election*), and *In re District Justice*, 670 A.2d at 639, which cites *General Election* for the proposition that absent allegations of fraud, voters should not be permitted to testify about their ballot choices. In *General Election*, the trial court sitting as an appellate court, set aside an election for a county commissioner seat and ordered a special election where a voting machine malfunction had allegedly occurred. 71 Pa. D. & C.2d at 86. The appellant sought to overcome a statutory provision indicating that the returned vote count was accurate through the presentation of the parol testimony of 70 voters. *Id*.

at 89-91.  In considering if such evidence was admissible, the trial court analyzed the Ballot Secrecy Clause and determined that "to permit a voter to testify how he voted may be equated with granting him or her the privilege of voting '*viva voce*.'" *Id*. at 91.  The trial court reasoned that allowing such testimony would also amount to "waiver [of ballot secrecy] run[ning] counter to public policy."  *Id*. at 92.  The trial court concluded:

> To permit such **testimony would allow the witnesses in effect to waive the constitutional right of others to secrecy of the ballot**.  **A person may waive his own right but not another's right**.
>
> We believe we would be setting dangerous and unwise precedent to permit a group of voters to testify how they voted when the clear inference to be drawn from the testimony will be that all other voters in the election district voted for a different candidate or candidates.

*Id*. at 92-93 (emphasis added).

Here, similar to *General Election*, by allowing the public disclosure of copies of voted mail-in ballots, the Majority would in effect permit Matthew Van Bibber and Patricia Weaver (together, Requesters) to waive another person's right to ballot secrecy, *i.e.*, any voter whose voted mail-in ballot is produced in response to the subject RTKL request.  Such waiver could occur, according to the County and the Department, in at least 1,400 instances across the state, through the comparison of already available statewide voter lists, ballot applications, and executed voter declarations, with copies of the disclosed voted mail-in ballots.  *See Commonwealth v. Edwards*, 874 A.2d 1192, 1197 (Pa. Super. 2005) ("It should be patently clear, however, that a [person], while free to give up certain constitutional protections,

cannot cede away the constitutional rights of another.").[9]  This leads to a result that runs counter to the ballot secrecy protections provided under our Constitution.

The Majority does not address the right to ballot secrecy in concluding that copies of voted mail-in ballots are disclosable under the RTKL and Election Code, instead focusing on the interplay between the public disclosure requirements of these statutes. In her concurring opinion, Judge Wallace suggests that the redaction of a voter's ballot selections may ensure privacy, and the fact that privacy concerns may be present in certain election precincts should not prohibit the disclosure of all mail-in ballots. *Allegheny County v. Van Bibber* (Pa. Cmwlth., Nos. 379-380 C.D. 2023, filed Dec. 17, 2024) (Wallace, J., concurring), slip op. at SW-5; *see also* Section 706 of the RTKL, 65 P.S. § 67.706.   While I recognize that redaction under the RTKL, in certain instances, may protect an individual's privacy interests while accommodating the public's right to governmental transparency, considering the Ballot Secrecy Clause's stringent, overarching goal of maintaining the secrecy of the ballot, I am not convinced that redaction can serve such a purpose here.[10]

Under our Constitution, the General Assembly may authorize any method of election, so long as such method **preserves** secrecy in voting.  PA. CONST. art. VII, § 4 (emphasis added.)  "[T]he requirement that secrecy [in voting] must be preserved cannot alone inform the legislature as to what methods it may prescribe, **only that those methods must maintain this secrecy**[] [and] [t]his . . . [is] the sole restriction

---

[9] Although not binding on this Court, Pennsylvania Superior Court cases may offer persuasive precedent where they address analogous issues. *See, e.g.*, *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 653 n.20 (Pa. Cmwlth. 2021).

[10] *See* Section 3101.1 of the RTKL, 65 P.S. § 67.3101.1 ("If the provisions of [the RTKL] regarding access to records conflict with any other Federal or State law, the provisions of [the RTKL] shall not apply."); Section 306 of the RTKL, 65 P.S. § 67.306 ("Nothing in [the RTKL] shall supersede or modify the public or nonpublic nature of a record or document established in Federal or State law, regulation or judicial order or decree.").

found in [the Ballot Secrecy Clause]." *McLinko II*, 279 A.3d at 577-78 (emphasis added). "There is no [other] restriction – other than the **maintenance of secrecy**" binding our Legislature. *Id*. at 578 (emphasis added). Considering this sole constitutional restriction, it is not just the ability to cast a secret ballot that is protected under the Ballot Secrecy Clause, but also the maintenance of secrecy as to one's ballot choices.

This Court has examined the role redaction can play in balancing the public's right to access under the RTKL with conflicting constitutional protections.

For example, in *Pennsylvanians for Union Reform v. Pennsylvania Office of Administration*, 129 A.3d 1246, 1261-62 (Pa. Cmwlth. 2015) (*PFUR*), this Court considered whether the public disclosure of a union member's payroll contributions to a union political action committee, pursuant to an RTKL request, violated the union member's right to freedom of association under the First Amendment to the United States Constitution, U.S. CONST. amend. I. We cited *Housing Authority of City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012), in which we noted:

> There may be some cases in which the evidence establishes that disclosure of public records which are not facially exempt will necessarily or so easily lead to disclosure of protected information that production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent. . . .

*Id*. at 216 Finding *PFUR* to present such a case, based on the records sought and the interplay between the information contained in each record, we found that even if the union member's name was redacted, the member's union association would

nevertheless be disclosed. *Id*. at 1262. In other words, in *PFUR*, redaction alone could not remedy the potential violation of a protected constitutional right.

Here, there are multiple variables at play making redaction an imperfect solution under our Constitution's ballot secrecy scheme. For instance, each of the 67 counties in our Commonwealth likely have several small voting precincts or precincts in which a small number of voters request mail-in ballots in each election. Permitting the disclosure of copies of voted mail-in ballots would, in essence, require each county board of elections to implement redaction procedures and rules that comply with the Constitution, the Election Code, and the RTKL. Such redaction procedures and rules could vary widely in scope and depth and may not be applied uniformly. This could also lead to redaction mistakes made by election board employees, thus, inadvertently revealing a voter's ballot selections.

The ballot secrecy principles enshrined in our Constitution, and as interpreted by our Supreme Court in *In re District Justice,* mandate the maintenance of **complete secrecy of a legal voter's ballot**, unless the voter **voluntarily** reveals their ballot choices in response to allegations of voter fraud before a court of competent jurisdiction. Permitting the disclosure of voted mail-in ballots, based on a plethora of varying redaction procedures and rules implemented by 67 different counties, does not comport with the strict ballot secrecy protections afforded to voters by our Constitution.

Turning next to the issue of notice and an opportunity to object, any voter whose voter information is subject to disclosure under the RTKL or the Election Code should be provided notice and an opportunity to object prior to any disclosure. This aligns with our Supreme Court's decision in *Pennsylvania State Education*

*Association v. Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016) (*PSEA*). The Supreme Court reiterated "to the [Office of Open Records], and to the General Assembly, [the Court's] previously expressed concerns regarding the disjointed and scant procedural protections at both the request and appeal stages of the RTKL." *Id*. at 159-60.

I believe it is similarly necessary that procedural safeguards be provided to voters when a voter's ballot information is deemed publicly disclosable under the RTKL or the Election Code, along with an opportunity to object to disclosure at both the RTKL request stage and through the administrative appeal process.

Based on the foregoing considerations, I would affirm common pleas' Orders and must, therefore, respectfully, dissent.

_____
**RENÉE COHN JUBELIRER,** President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| Allegheny County | : | **CASES CONSOLIDATED** |
| :--- | :--- | :--- |
| v. | : | No. 379 C.D. 2023 |
| Matthew Van Bibber,<br>            Appellant | : | |
| Allegheny County | : | |
| v. | : | No. 380 C.D. 2023 |
| Patricia Weaver,<br>            Appellant | : | Argued: October 9, 2024 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE STACY WALLACE, Judge
                    HONORABLE MATTHEW S. WOLF, Judge

## _OPINION NOT REPORTED_

CONCURRING OPINION
BY JUDGE McCULLOUGH                              FILED: December 17, 2024

I agree in full with the Majority's conclusion that digital images of completed mail-in ballots are records accessible to the public through a Right-to-Know Law[1] (RTKL) request. Nevertheless, and as I noted in my concurring opinion in _Previte v. Erie County Board of Elections_, 320 A.3d 908, 917 (Pa. Cmwlth. 2024) (McCullough, J., concurring), _petition for allowance of appeal filed_, (Pa., No. 230 WAL 2024, filed August 29, 2024). I continue to disagree with this Court's majority decision in _Honey v. Lycoming County Offices of Voter Services,_ 312 A.3d 942 (Pa. Cmwlth. 2024), _appeal granted_, (Pa., No. 163 MAL

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

2024, filed October 7, 2024), where we concluded that an in-person ballot scanner was a part of a "voting machine" and that scanned in-person ballots and digital images of those ballots were exempt from public disclosure. For the reasons set forth in my dissent in *Honey* and my concurrence in *Previte*, I continue to conclude that *Honey* was in error.[2]

The Majority here, citing *Honey*, concludes that Section 308 of the Pennsylvania Election Code (Election Code)[3] "shields completed [in-person] ballots and digital copies thereof from RTKL requests once those ballots have been deposited into a ballot box or recorded through a voting machine." *Allegheny County v. Van Bibber* (Pa. Cmwlth., Nos. 379 & 380 C.D. 2023, filed December 17, 2024 ) (Majority), slip op. at 10. However, as I consistently have maintained, Section 308 of the Election Code does **not** shield completed in-person ballots and digital copies of those ballots from RTKL requests once those **ballots** have been scanned by an **electronic voting system**, which is done to assist with tabulating votes. Section 308 provides, in relevant part, as follows:

> The **records** of each county board of elections, general and duplicate returns, tally papers, affidavits of voters and others, nomination petitions, certificates and papers, other petitions, appeals, witness lists, accounts, contracts, reports and other documents and records in its custody, **except the contents of ballot boxes and voting machines** and records of assisted voters, **shall be open to public inspection,** except as herein provided, and may be inspected and copied by any qualified elector of the county during ordinary business hours, at any time when they are

---

[2] I note that the Pennsylvania Supreme Court recently granted review of our decision in *Honey*. *See Honey v. Lycoming County Offices of Voter Services* (Pa., No. 163 MAL 2024, filed October 7, 2024).

[3] Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2648.

PAM-2

not necessarily being used by the board, or its employes having duties to perform thereto[.]

25 P.S. § 2648 (emphasis added). This Section must be read together with Section 1101-A of the Election Code, which, by contrast, states:

> **"Automatic tabulating equipment"** means any apparatus which **automatically examines and computes votes** registered on paper ballots, ballot cards or district totals cards or votes registered electronically **and which tabulates such votes.**

Added by the Act of July 11, 1980, P.L. 600, 25 P.S. §3031.1 (emphasis added). Clearly, ballot scanners, which create a record, are used to examine, compute, and tabulate votes, which places them squarely within Section 1101-A's definition of "automatic tabulating equipment." As such, they are not ballot boxes or voting machines and must be viewed as separate and distinct parts of the voting process, the purpose of which is to tabulate vote data. *See Honey*, 312 A.3d at 955 (McCullough, J., dissenting) (ballot scanners are used to tabulate vote data, which is then used to produce other data about a particular election, including cast vote records (CVRs), which are not ballots and do not contain voter-identifying information). To construe them otherwise as voting machines or ballot boxes, in my view, ignores the clear intent of the legislature. Accordingly, to the extent the Majority suggests that digital images of completed in-person ballots are protected from public disclosure in its discussion of Section 308, I cannot agree with that portion of the Majority's analysis.

Furthermore, the construction of the Election Code adopted first in *Previte* and again by the Majority here, taken together with our decision in *Honey*, treats in-person and mail-in/absentee ballots and voters differently and creates contradiction and confusion in the voting process. This discord could have been avoided by adopting the interpretation of the Election Code that I outlined in

PAM-3

*Honey*, which is entirely consistent with the Majority's holding today that completed mail-in ballots are public records subject to disclosure through RTKL requests. I would have held in *Honey* that the digital analogues of scanned in-person ballots are public records subject to disclosure. Under that rendering, both in-person and mail-in ballots and voters are treated exactly the same without compromising or infringing upon any voter's right to secrecy.[4] *See Honey*, 312 A.3d at 956 (McCullough, J., dissenting) (disclosure of ballot information contained in CVRs does not disclose identifying information of any voter).

With regard to voter secrecy specifically, I note that the Dissenting Opinion misses the mark on this issue for a glaring and critical reason. Although article 7, section 4 of our constitution provides for voting in secret and without undue coercion, such protections expressly apply to the "method" of voting. In other words, Pennsylvania voters unquestionably are guaranteed the right to vote in secrecy and without undue outside constraints.

Here, by contrast, we are not dealing with the method of the voting process; nor are we dealing with any original ballots, voter marks, or other voter-identifying information. Rather, and in light of the General Assembly's passage of Act 77 of 2019, Act of October 31, 2019, P.L. 552, No. 77, we consider only whether anonymous copies or digital images of mail ballots that neither bear nor are accompanied by any voter-identifying information are subject to public disclosure under the RTKL. Certainly, in this instance, the equally important right to free and equal elections guaranteed to the citizens of the Commonwealth is implicated. *See* Pa. Const. art. I, § 5. That right mandates that citizens be able to examine and review mail

_____

[4] *See* Pa. Const. art. VII, § 4 ("All elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved.").

ballots to ensure regularity and integrity in the voting process. That ability, which, as the Majority aptly discusses, has been recognized and required by the General Assembly, is integral to the maintenance of a free, open, and democratic society. To deny it in the name of illusory and unimplicated concerns about voter privacy is to deny it altogether.

For these reasons, and for the reasons set forth in my minority opinions in both *Honey* and *Previte*, I am able only to respectfully concur in the result.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny County | : | **CASES CONSOLIDATED** |
| | : | |
| v. | : | |
| | : | |
| Matthew Van Bibber, | : | |
| Appellant | : | No. 379 C.D. 2023 |
| | | |
| Allegheny County | : | |
| | : | |
| v. | : | |
| | : | |
| Patricia Weaver, | : | No. 380 C.D. 2023 |
| Appellant | : | Argued: October 9, 2024 |


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE ELLEN CEISLER, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

CONCURRING OPINION
BY JUDGE WALLACE                        FILED:  December 17, 2024


I agree with the majority that voted mail-in ballots are public records subject to disclosure under Section 1307-D(a) of the Pennsylvania Election Code (Election Code).[1]  However, I write separately because my reasoning differs from the majority

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, added by the Act of Oct. 31, 2019, P.L. 552, 25 P.S. § 3150.17(a).

opinion in this case and in *Previte v. Erie County Board of Elections*, 320 A.3d 908 (Pa. Cmwlth. 2024), *pet. for allowance of appeal filed* (Pa., No. 230 WAL 2024, filed Aug. 29, 2024).[2]  Section 1307-D(a) directs: "All official mail-in ballots, files, applications for ballots and envelopes on which the executed declarations appear and all information and lists are designated and declared to be public records . . . except that no proof of identification shall be made public . . . ."  25 P.S. § 3150.17(a).  In Section 1309(a) of the Election Code,[3] essentially identical language designates and declares "[a]ll official absentee ballots" to be public records.  25 P.S. § 3146.9(a).

Consistent with *Previte*, the majority bases its decision on the items listed in Section 1307-D(a) other than ballots, such as files, applications, and envelopes, and on the prohibition of disclosing proof of identification.  According to the majority, it would be unreasonable to believe our General Assembly intended to exempt voted mail-in ballots from public disclosure because the other items in Section 1307-D(a) "refer to materials relating to the process that produces a completed mail-in ballot." *Allegheny Cnty. v. Van Bibber* (Pa. Cmwlth., Nos. 379 C.D. 2023, 380 C.D. 2023, filed Dec. 17, 2024), slip op. at 10.  The majority adds that the prohibition on disclosing proof of identification must indicate voted mail-in ballots are subject to disclosure because "such concerns would not be present with regard to uncompleted ballots themselves, as such ballots obviously do not contain cast votes." *Id.*

I find the majority's reasoning unconvincing.  First, as the Department of State (Department) points out, unvoted mail-in ballots are also "materials relating to the process that produces a completed mail-in ballot" and would fit just as logically in

---

[2] I was not part of the panel that decided *Previte*.

[3] Added by Section 11 of the Act of March 6, 1951, P.L. 3.

Section 1307-D(a). Second, proof of identification is included in a mail-in ballot application. *See* Section 1302.2-D(c) of the Election Code,[4] 25 P.S. § 3150.12b(a) (when reviewing a mail-in ballot application, the county board "shall determine the qualifications of the applicant by verifying the proof of identification and comparing the information provided on the application with the information contained on the applicant's permanent registration card"). The Election Code defines the term "proof of identification," which generally means the voter's driver's license number or the last four digits of his or her Social Security number. *See* Section 102(z.5)(3) of the Election Code, 25 P.S. § 2602(z.5)(3). The directive in Section 1307-D(a) that "no proof of identification shall be made public" refers to proof of identification included with mail-in ballot applications, rather than "identifying information" gleaned from voted ballots.[5]

Nonetheless, I find no merit to the claim that our General Assembly intended "official mail-in ballots" in Section 1307-D(a) to refer only to unvoted ballots. The Department contends "a review of the Election Code as a whole" demonstrates an "official mail-in ballot" is distinct from a voted ballot. Department's Suppl. Br. at 8; *see also* Allegheny County's Suppl. Br. at 3-4. To the contrary, there are instances in the Election Code where an "official" mail-in or absentee ballot is unquestionably the voted ballot. The Election Code defines the term "pre-canvass," for example, to include "inspection and opening of all envelopes containing official absentee ballots or mail-in ballots, the removal of such ballots from the envelopes and the counting,

---

[4] Added by the Act of Oct. 31, 2019, P.L. 552.

[5] There is a possibility an elector will fail to submit proof of identification with an application as required, or the county election board will be unable to verify the proof of identification submitted, in which case "the board shall send notice to the elector with the mail-in ballot requiring the elector to provide proof of identification with the mail-in ballot or the ballot will not be counted." Section 1302.2-D(c) of the Election Code, 25 P.S. § 3150.12b(c).

SW - 3

computing and tallying of the votes reflected on the ballots."[6]  Section 102(q.1) of the Election Code, 25 P.S. § 2602(q.1).

Treating voted mail-ballots as public records is also consistent with the history of the statutory language.  The language at issue has existed since at least the 1940s, when it was applied to "official military ballots."  *See Appeal of Simon*, 46 A.2d 243, 245 n.5 (Pa. 1946) (quoting Section 10 of the Act of Mar. 9, 1945, P.L. 29, *formerly* 25 P.S. § 3145, repealed by the Act of Mar. 5, 1947, P.L. 35) ("All official military ballots . . . are hereby designated and declared to be public records . . . .").  Our Supreme Court applied this language in *Simon*, condemning the Lackawanna County election board for its failure "to make the ballots, military files, and applications for such ballots public records."  *Id.* at 245.  We can deduce the Court was referring to voted ballots because it described the failure to make the ballots public as a violation of Election Code provisions "regulating the counting of the votes cast by persons in military service," and only voted ballots were at issue in the case.  *Id.* at 244.

It is important to reiterate that the language regarding "official mail-in ballots" in Section 1307-D(a) is essentially identical to language regarding "official absentee ballots" in Section 1309(a).  The General Assembly's intent to make voted absentee ballots public records was abundantly clear in an amendment adding Article XIII-B to the Election Code, effective January 1, 1960.  Article XIII-B governed absentee voting and provided as follows, in relevant part:

> Section 1308-B.  Ballots to be Public Records.—The ballots, after being opened and duly counted by the return board, together with

---

[6] *See also, e.g.,* Section 1308(b) of the Election Code, added by the Act of Mar. 6, 1951, P.L. 3, 25 P.S. § 3146.8(b) ("Watchers shall be permitted to be present when the envelopes containing official absentee ballots and mail-in ballots are opened and when such ballots are counted and recorded.").

completed forms received therewith, are hereby designated and declared to be public records and shall be safely kept in the custody of the county board of elections for the period of two years, and in case of a contested election the same may be opened and counted as in other cases.

Section 1308-B of the Election Code, added by the Act of Jan. 8, 1960, P.L. (1959) 2135, *formerly* 25 P.S. § 3149.8, repealed by the Act of Aug. 13, 1963, P.L. 707. In the Act of August 13, 1963, the General Assembly repealed Article XIII-B, effective January 1, 1964, and applied the language our Supreme Court addressed in *Simon* to "official absentee ballots."

Allegheny County and the Department express alarm that treating voted mail-in ballots as public records will endanger the constitutional right to secrecy in voting, particularly in small precincts where there may be very few mail-in ballots cast. *See* Pa. Const. art. VII, § 4 (requiring "[t]hat secrecy in voting be preserved"). In other contexts involving public records, a responding agency can produce some requested documents while redacting or withholding others. *See* Section 706 of the Right-to-Know Law (RTKL), Act of Feb. 14, 2008, P.L. 6, 65 P.S. § 67.706. To the extent a small precinct has few mail-in ballots cast, such that disclosing ballots might reveal a voter's selections, the ballots can be redacted to ensure privacy. The fact privacy concerns might exist in some precincts does not require that all mail-in ballots should be withheld in violation of the Election Code.

The dissent argues that redaction would not ensure secrecy of voted mail-in ballots in small precincts. Respectfully, the dissent relies only on speculation that disclosure of voted mail-in ballots would lead to inconsistent procedures and mistakes by county election boards. This Court cannot find a constitutional violation and strike down part of the Election Code based on the mere possibility of human error in a future case which may not even come to be. Complying with our state

Constitution and complying with the Election Code are not mutually exclusive propositions. By redacting or even withholding altogether, if necessary, voted mail-in ballots cast in small precincts, we can honor the General Assembly's intent in the Election Code while still safeguarding sanctity of the ballot.

It is significant that Allegheny County decided not to disclose the voted mail-in ballots based on advice it received from the Department. I see no reason why the Department could not provide similar advice, or perhaps even formal guidance,[7] on the redaction or withholding of voted mail-in ballots. Indeed, the Department states it has the duty to ensure "that the provisions of the [] Election Code regarding public access are interpreted in a uniform manner throughout Pennsylvania's sixty-seven counties." Department's Br. at 1. The Department can instruct county election boards that "a legal voter may not be compelled by a court or any other tribunal to waive the right to ballot secrecy." *See Allegheny Cnty. v. Van Bibber* (Pa. Cmwlth., Nos. 379 C.D. 2023 & 380 C.D. 2023, filed Dec. 17, 2024) (Cohn Jubelirer, P.J., dissenting), slip op. at 6. If the Department believes a precinct is so small that disclosure would violate voter privacy or believes precincts should have at least a certain number of cast mail-in ballots for redaction to be unnecessary, for example, it may offer suggestions on those matters. Even general guidance about voter privacy concerns pertaining to mail-in ballots in small precincts could do the trick. In this way, the Department can fulfill its duty of ensuring uniformity throughout our Commonwealth. And, if a case arose, then our courts could tackle the issue at

---

[7] *See* Commonwealth of Pennsylvania Department of State, *Election Directives and Guidance*, https://www.pa.gov/en/agencies/dos/resources/voting-and-elections-resources/directives-and-guidance.html#accordion-8e773eeff1-item-018f28c619 (last visited Dec. 16, 2024).

that time. To reiterate, our courts may have the opportunity to address this issue and offer clarity in *future* decisions.[8]

The Department contends, finally, that disclosure would result in voters being treated differently depending on whether they vote in-person or by mail-in ballot, in violation of article I, section 5 of the Pennsylvania Constitution's guarantee of free and equal elections, Pa. Const. art. I, § 5.[9] There are significant distinctions between voting in person and by mail-in ballot, and it is reasonable for our General Assembly to subject mail-in ballots to greater scrutiny. *See Banfield v. Cortes*, 110 A.3d 155, 176-77 (Pa. 2015) (explaining, "the state may enact substantial regulation containing reasonable, non-discriminatory restrictions to ensure honest and fair elections that proceed in an orderly and efficient manner"). Although the Election Code is replete with protections to promote the integrity of in-person voting, such as the presence of watchers while ballots are being cast, the same protections do not apply or cannot be applied as effectively with respect to mail-in ballots.

---

[8] I cannot stress enough that voter privacy is not implicated in *this* case. Allegheny County does not specify that disclosing voted mail-in ballots from any of its precincts would violate secrecy protections.

[9] In part, the Department contrasts *Previte* with the Court's decision in *Honey v. Lycoming County Offices of Voter Services*, 312 A.3d 942 (Pa. Cmwlth. 2024), *appeal granted* (Pa., No. 163 MAL 2024, filed Oct. 7, 2024), which held a randomized Cast Vote Record with no identifying information was exempt from public disclosure. I dissented in *Honey*, though I recognize the case remains precedential. The Department observes, correctly, that *Honey* works an absurd result when read alongside this case and *Previte*, because *Honey* prohibited public disclosure of a Cast Vote Record containing votes from mail-in and absentee ballots, but this case and *Previte* require disclosure of the ballots themselves. In *Honey*, the Court reasoned that "what is special about the ballots is not so much the form which they take, but the voting information which they contain." 312 A.3d at 954. In this case and *Previte*, the Court recognizes the General Assembly is not solely concerned with protecting "voting information," and the form ballots take can be a determinative factor.

SW - 7

Accordingly, I agree with the majority's conclusion that voted mail-in ballots are public records and subject to disclosure under Section 1307-D(a). The Court of Common Pleas of Allegheny County erred by deciding otherwise, and the majority correctly reverses the March 23, 2023, and March 31, 2023 orders. Because I cannot accept the majority's reasoning here and in *Previte*, however, I respectfully concur. Rather than focus narrowly on the list of items mentioned alongside "official mail-in ballots" and a reference to "proof of identification" in Section 1307-D(a), I would view the statutory language in light of the overall context of the Election Code and its history.[10]

_____
STACY WALLACE, Judge

---

[10] The majority does not specifically address issues the parties raised in their initial briefs regarding whether courts must defer to the agency interpretation of the Election Code and whether the Office of Open Records has jurisdiction to order the release of voted mail-in ballots. Agency deference is inappropriate under these circumstances, where the "interpretation" in question is a Department e-mail sent in response to a public records request and represents nothing more than a "convenient litigation position." *See Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 1154 (Pa. 2009) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988)). Further, I am satisfied the Office of Open Records had jurisdiction in this case, given that the Election Code designates voted mail-in ballots as public records and supplies no detailed procedure for requesting access to ballots or for challenging the county election board's decision if it refuses to grant access. *Cf. Energy Transfer v. Friedman*, 265 A.3d 421, 431-33 (Pa. 2021) (concluding the Office of Open Records was without jurisdiction where, among other things, the records at issue were not public records, and a statute other than the RTKL provided a procedure for the Pennsylvania Public Utility Commission to grant access or hear challenges related to accessing records).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny County | : | **CASES CONSOLIDATED** |
| | : | Nos. 379 C.D. 2023 |
| v. | : | |
| | : | |
| Matthew Van Bibber, | : | |
| Appellant | : | |
| | | |
| Allegheny County | : | |
| | : | |
| v. | : | 380 C.D. 2023 |
| | : | |
| Patricia Weaver, | : | |
| Appellant | : | Argued: October 9, 2024 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY JUDGE WOLF                    FILED:  December 17, 2024

I join the Majority's opinion because the outcome of this case is controlled by our reported *en banc* decision in *Previte v. Erie County Board of Elections*, 320 A.3d 908 (Pa. Cmwlth. 2024) (*en banc*), *petition for allowance of appeal filed*, (Pa., No. 230 WAL 2024, filed August 29, 2024).  Because *Previte* controls, I reiterate the reservations I stated in my concurring opinion in *Previte*, 320 A.3d at 919-22 (Wolf, J., concurring), and I briefly explain why I concurred there

and here. My concern is this: through several decisions, we have interpreted the Pennsylvania Election Code[1] to *prohibit* public disclosure of ballots[2] cast in person, but to require public disclosure of ballots cast by mail. *See Honey v. Lycoming Cnty. Offs. of Voter Servs.*, 312 A.3d 942, 953-54 (Pa. Cmwlth. 2024), *appeal granted*, ___ A.3d ___ (Pa., No. 163 MAL 2024, transferred to No. 79 MAP 2024); *Stroehmann v. Lycoming Cnty. Off. of Voter Servs.* (Pa. Cmwlth., No. 555 C.D. 2023, filed July 12, 2024) (*en banc*), 2024 WL 3385111, slip op. at *5, *petition for allowance of appeal filed*, (Pa., No. 378 MAL 2024, filed August 2, 2024); *Previte*, 320 A.3d at 916-17.

Those decisions are now before our Supreme Court for review.[3] As I wrote in concurrence in *Previte*, our interpretation provokes constitutional questions, particularly since mail-in and absentee voting are equal—not second-class—ways to exercise the fundamental right to vote. *Previte*, 320 A.3d at 922 (Wolf, J., concurring). I acknowledged then, and still do, that no party before us has raised that constitutional issue. *Id.* Courts sometimes prefer one statutory interpretation over another to avoid constitutional questions, but not if that option is "unavailable to [them]"—as perhaps it is when a party has not presented the constitutional issue. *Wolf v. Scarnati*, 233 A.3d 679, 709-10 (Pa. 2020) (Dougherty, J., concurring and dissenting).

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[2] As our decisions have stated, these rules of public disclosure *vel non* apply not only to the ballots themselves, but also to digital images of the ballots.

[3] The Supreme Court has granted allocatur in *Honey* (Pa., No. 163 MAL 2024) and has held the petition for allowance of appeal in *Stroehmann* (Pa., No. 378 MAL 2024) pending the outcome of *Honey*. The Supreme Court is also considering a pending petition for allowance of appeal and answer thereto in *Previte* (Pa., No. 230 WAL 2024). In my view, the *en banc* Majority prudently files the instant decision as unreported so as to avoid multiplying precedent unnecessarily while those appeals are pending.

MSW-2

That is why I addressed my concurrence in *Previte* to the General Assembly. The General Assembly is not limited by party presentation. "All our interpretive decisions . . . are balls tossed into [the legislature's] court, for acceptance or not as that branch elects." *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015). The legislature should want its laws to be clear and properly interpreted. By my count, this is the fourth decision of this Court on this issue that finds the Election Code "facially unclear" with "conflict between" provisions that the Court endeavored to "harmonize." *Allegheny Cnty. v. Van Bibber* (Pa. Cmwlth., Nos. 379 & 380 C.D. 2023, filed Dec. 17, 2024), slip op. at 10-11. Suffice it to say I believe the Election Code could be clearer on this point, and the General Assembly can make it so. The General Assembly must also ensure that the Code hews to the constitutional line. Legislators have sworn an oath to do so, which is the reason why we presume their enactments constitutional. *Stilp v. Commonwealth*, 905 A.2d 918, 938 (Pa. 2006); *see also* PA. CONST. art. VI, § 3 (oath of office).

In stating my concern about constitutional implications and calling for legislative clarity, I do not favor one policy outcome over another as to the public accessibility of voted ballots. I ask only that the General Assembly carefully consider whether our interpretation—including as it may be modified by our Supreme Court—is correct, and if not, that it amend the Election Code to clarify the intended meaning.

_____
MATTHEW S. WOLF, Judge

MSW-3